Robert C. BUTLER, Petitioner-Appellee,

v.

Jim ROSE, Warden,
Respondent-Appellant.

No. 80–1412.

United States Court of Appeals,
Sixth Circuit.

Argued April 26, 1982.

Decided Aug. 13, 1982.

William M. Leech, Jr., Atty. Gen. of Tenn., Robert L. Jolley, Jr., Asst. Atty. Gen., Nashville, Tenn., for respondent-appellant.

Larry D. Woods, Nashville, Tenn. (Court-appointed), for petitioner-appellee.

Before EDWARDS, Chief Judge, and LIVELY, ENGEL, KEITH, MERRITT, BROWN,* KENNEDY, MARTIN, JONES, CONTIE and KRUPANSKY, Circuit Judges.

LIVELY, Circuit Judge.

The district court granted relief to the petitioner in this habeas corpus case and

---

* Circuit Judge Bailey Brown retired from regular active service under the provisions of 28 U.S.C. § 371(b) on June 16, 1982, and became a Senior Circuit Judge.

this court reversed on appeal. *Butler v. Thompson*, (6th Cir. 1982).[1] The judges of this court then voted in favor of rehearing *en banc*. Rule 14, Rules of the Sixth Circuit provides: "The effect of the granting of a hearing *en banc* shall be to vacate the previous opinion and judgment of this court, to stay the mandate and to restore the case on the docket as a pending appeal." Following supplemental briefing the appeal was argued orally to the full bench and submitted for decision.

## I.

The petitioner was convicted of rape following a jury trial in the criminal court of Knox County, Tennessee. Butler was a 34-year-old male instructor in sociology at the University of Tennessee at the time of the events which formed the basis of the charge of rape. The complainant, Jean Hudson, was an 18-year-old female student in one of Butler's classes. The Tennessee Court of Criminal Appeals summarized the evidence as follows:

The evidence adduced at trial showed that on October 7, 1976, Jean Hudson, a student at the University of Tennessee in Knoxville, took a sociology test in the office of the defendant, the course instructor. The test had been scheduled for the following day for the whole class, but by previous arrangement Ms. Hudson was allowed to take it early to permit her to accompany her brother to Memphis to visit their parents.

Upon concluding the examination, Ms. Hudson asked Butler about one question, and Butler then engaged her in a discussion, telling her that he enjoyed talking with his students and having them participate in various unspecified experiments. After several minutes of this general conversation during the course of which Butler had been asking Ms. Hudson about her opinions on various matters, he asked her how she would react if a black male approached her and said "let's screw," to which Ms. Hudson replied that she would find such behavior offensive without regard to the man's race. Thereupon, Butler invited his student to participate in an experiment of an undefined nature with him, to which she agreed.

The prosecutrix testified that Butler placed two chairs in a closet in his office and had Ms. Hudson sit in one while he closed the door and sat in the other. In the dark he told Ms. Hudson to perform fellatio, which she refused to do, believing that the experiment was designed to study her response in such a situation. This belief was dispelled, however, when the appellant announced that he was "into violence" and produced a sharp object which he said was a knife and which he held against the victim's neck, threatening to cut her throat if she did not cooperate. After several minutes of fellatio, the appellant made Ms. Hudson stand up while he removed her jeans and panties, then had her sit on his lap so that he was able to have intercourse. Ms. Hudson braced her hands against the wall at about shoulder level during this latter part of the ordeal.

The appellant ultimately relaxed, opened the door and released his victim, according to her unrefuted testimony. Ms. Hudson put her clothes back on, retrieved her purse and books from the desk in the office and walked to the office door, at which point the appellant intercepted her and held his foot against the door, blocking it as she started to open it to leave. He asked her why she didn't stick around for him to get her reaction to his "experiment," but she responded by using both hands to pull the door open. She did not run as she escaped, fearful that Butler would chase her, but she chose the longer route out of the building so as to avoid the possibility of being entrapped in a stairwell near the instructor's office.

Upon returning to her dormitory room, Ms. Hudson disclosed these facts to her roommate, at whose urging Ms. Hudson contacted the university police. An officer took the prosecutrix to the university

---

1. Warden Rose was substituted as respondent by order of this court.

hospital, where she was examined and released. On separate occasions she told that policeman and a second officer who handles rape cases for the university what had happened. Each recounting of the events was highly consistent with the others. Detective Phillips testified that she observed a discoloration on Ms. Hudson's neck while the victim was talking to her.

\* \* \* \* \* \*

Butler did not testify. The only positive evidence adduced by the defense was testimony by a woman who was in class with Butler from 4:00 to 5:15 p. m. on the day in question, roughly one and one-half to two hours after the conduct in question. This witness testified that while in her presence Butler behaved normally.[2]

## II.

### A.

The petitioner's conviction was affirmed by the Tennessee Court of Criminal Appeals and certiorari was denied by the Supreme Court of Tennessee. Butler was represented by counsel at the trial and on appeal. Following denial of certiorari by the Supreme Court of Tennessee Butler filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Middle District of Tennessee. Though the named respondent was the warden of a state prison having Butler in his custody, we will refer to the respondent-appellant in this opinion as "the state."

### B.

In his *pro se* application for habeas relief the petitioner listed five grounds: (1) Improper argument by the prosecuting attor-

ney in which defense counsel was accused of attempting to defraud the jury; (2) impermissible reference by the prosecuting attorney in his closing argument to the fact that petitioner had not testified; (3) failure of the state to prove guilt by a preponderance of the evidence; (4) the punishment imposed by the jury (life imprisonment) was "unreasonable and arbitrary"; (5) error by the trial court in refusing to receive evidence concerning the method of selecting jurors. The district court found that claim (2) was meritorious and did not consider the other grounds asserted by the petitioner. However, the district court did consider "cumulative factors" which were found to support its conclusion that relief was proper, though these "factors" were not included in the specific grounds on which the petitioner based his claim.

### C.

Petitioner was very specific with respect to ground (2) in his application.

The State's Attorney committed prejudicial error in final argument by making reference to the fact that the petitioner presented no proof to refute the State's proof. At page 188 of the Bill of Exceptions beginning at line 9 through 15, and then on page 190, line 10 through 15, the State's Attorney commented on the petitioner's failure to testify. Also, the trial judge's cautionary instruction given to the jury at that time reemphasized the Assistant District Attorney's comment on the petitioner's failure to testify.

The two statements referred to and relied upon by petitioner are the following:

Well, I submit to you, ladies and gentlemen, that you cannot allow that to happen in this case. Mr. Butler is an instructor and you have got to tell him as

---

**2.** In his dissent Judge Edwards notes that the jury fixed Butler's sentence at life imprisonment and finds this punishment "unusual." Though Ms. Hudson was not beaten, she did testify that while he was urging her to submit Butler pressed something sharp against her neck, told her it was a knife and that he was "into violence." A detective who questioned Ms. Hudson observed a discoloration on her neck which looked like a "pressure mark."

Thus the jury could have believed that a forcible rape took place at knife-point. We find nothing unusual in the jury's imposing the maximum sentence for forcible rape under circumstances where a middle-aged male instructor who had just given an examination to his 18-year-old female student lured her into a vulnerable position with vague talk about his "experiments" and then raped her while threatening her with a knife.

an instructor he cannot do this and get away. He cannot do this and just get back and have an attorney say, "ah, she is just not telling the truth." Without putting one witness to show why she might be telling otherwise or *how* she might be telling otherwise.

Bill of Exceptions, page 188, lines 9–15 (emphasis in original).

Apparently what Mr. Ellis is saying is that in a rape case we are just going to always say it is just made up and put on no proof to show why it was made up or anything to indicate the witness is lying in any way and then you just can't convict, couldn't convict in any rape case.

Bill of Exceptions, page 190, lines 10–15.

Immediately following the second statement, defense counsel made his only objection in the following colloquy:

MR. ELLIS: Your Honor, I normally wouldn't object to that in argument, but I think that he has categorized some things into an area of protection that we have. He is classifying all the witnesses. I think he is going to have to qualify that. Because the defendant is under no obligation to testify. But yet under his argument he would be included in that class of witnesses.

THE COURT: He is not commenting on that, in my opinion, Mr. Ellis, and he is not entitled to comment on it. And the Court will charge that the defendant has the right not to testify.

MR. ELLIS: Thank you, Your Honor.

MR. GILL: I am referring to independent witnesses outside the party, Your Honor.

THE COURT: Why don't you make that clear to the jury?

### III.

#### A.

The state contends the district court erred in granting relief on the basis of issues which had not been raised in the state courts. This argument refers to the district court's reliance on "cumulative factors," and seeks to apply to this situation the Supreme Court's recent decision requiring complete exhaustion of state remedies. *See Rose v. Lundy,* —— U.S. ——, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). In *Rose v. Lundy,* the Court held that district courts must dismiss "mixed petitions"—those containing unexhausted as well as exhausted claims—rather than deciding the exhausted ones and dismissing the unexhausted ones. 102 S.Ct. at 1199, 1205. We do not read *Rose v. Lundy* as requiring a court of appeals to direct dismissal of a habeas corpus petition because the district court relied in part on issues which it raised, *sua sponte,* rather than relying solely on claims made by the petitioner.[3] In the present case the district court held unequivocally that the prosecutor's statements relied upon by the petitioner were unconstitutional comments on Butler's failure to testify. The petitioner had raised this issue at every stage of the state proceedings. He should not be required to suffer dismissal because the district court "added frosting to the cake."

#### B.

It was suggested at oral argument, however, that there may have been a failure to exhaust one of the grounds which the petitioner did rely upon in his habeas application. His fourth ground was that the sentence was unreasonable and arbitrary and not justified by the facts of the case. After reciting his version of the evidence, Butler concluded his statement of ground (4), "this sentence is indeed cruel and unusual punishment," without referring specifically to the Constitution or other federal authority. However, he cited the Eighth Amendment in the memorandum in support of his habeas petition.

---

**3.** The Court noted in *Rose v. Lundy* that the district court had identified 10 instances of prosecutorial misconduct, only five of which had been raised before the state courts. While this undertaking by the trial court in "assessing the atmosphere of the cause taken as a whole" was not approved, the holding that dismissal was required was based on the fact that the petitioner had included two grounds in his application (claims three and four) as to which he had not exhausted state remedies. *See Rose v. Lundy,* 102 S.Ct. at 1200.

In his motion for a new trial petitioner's attorney cited both Tennessee and federal authority, including the Eighth Amendment to the U. S. Constitution, in support of the claim that his sentence constituted cruel and unusual punishment. In his brief before the Court of Criminal Appeals Butler's attorney cited only Tennessee cases for the proposition that the petitioner's punishment was unreasonable and arbitrary. In disposing of this argument the appellate court cited the Tennessee statutes which set the punishment for rape. Though the attorney relied only on Tennessee authorities to support his excessive punishment claim in his petition to the Supreme Court of Tennessee for a writ of certiorari, Butler also filed a *pro se* petition with that court. In his petition Butler cited the Eighth Amendment in his "Propositions of Law and Fact."

■ The purpose of the requirement of exhaustion as codified in 28 U.S.C. § 2254(b)[4] is "to protect the state court's role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Rose v. Lundy, supra,* 102 S.Ct. at 1203. This is accomplished by giving the state courts an opportunity to pass upon and correct alleged violations of the constitutional rights of state prisoners in the first instance. Only when the state courts have had this opportunity and denied relief should resort be had to the federal court system. The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts . . . ." *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). "[T]he substance of a federal habeas corpus claim must first be presented to the state courts." *Id.* at 278, 92 S.Ct. at 513.

We believe the claim of cruel and unusual punishment was exhausted. The Eighth Amendment was specifically relied upon in the trial court and in the Supreme Court of Tennessee. The substance of the claim was presented and the state courts were given the initial opportunity to consider and act upon this constitutional claim.

### C.

■ The state also contends that the district court improperly considered portions of the closing argument to which no objection had been made at trial. Tennessee has a contemporaneous objection rule which may be applied to preclude consideration on appeal of matters which were not objected to at trial. *See State v. Sutton,* 562 S.W.2d 820 (Tenn.1978). Under the rule of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), failure of a petitioner to observe a state contemporaneous objection rule may preclude consideration of a particular claim in a habeas corpus proceeding. However, this rule of preclusion does not apply where a state appellate court has reached the merits of a claim based on a trial occurrence to which there was no objection. If the state chooses not to invoke its contemporaneous objection rule, the rule may not be relied upon as a separate and independent procedural ground which bars habeas relief. *Hockenbury v. Sowders,* 620 F.2d 111, 114–15 (6th Cir. 1980), *cert. denied,* 450 U.S. 933, 101 S.Ct. 1395, 67 L.Ed.2d 367 (1981).

■ The opinion of the Court of Criminal Appeals states that Butler assigned "certain portions" of the state's closing argument as error. Examination of Butler's "Assignment of Errors and Brief in Support" of his appeal in that court reveals that he relied on precisely the same language in the prosecutor's closing argument there as in the habeas action in district court. Thus, the Court of Criminal Appeals reviewed lines 9 through 15 on page 188 and lines 10 through 15 on page 190 of the Bill of Exceptions and found that neither statement constituted a comment on Butler's failure

---

4. 28 U.S.C. § 2254

(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

to testify. The district court was required to consider the claim in habeas corpus that these same statements did infringe petitioner's right to remain silent. However, other portions of the closing argument which were neither objected to at trial nor considered by a state court on appeal are not a proper basis for a habeas corpus ruling by the district court or this court.[5]

## IV.

### A.

In *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), the Supreme Court held that a California rule of evidence which permitted comment on failure of the defendant to testify at a criminal trial violated the Fifth Amendment prohibition against compulsory testimony. The Court recognized that a jury may infer guilt from silence of the defendant in any event but found it impermissible for the court to "solemnize[ ] the silence of the accused into evidence against him . . . ." *Id.* at 614, 85 S.Ct. at 1232. In *Griffin* the comments, both by the court and the prosecutor, were direct and adverse. The court instructed that among the inferences which the jury might draw from failure of the defendant to testify was that "those [inferences] unfavorable to the defendant are the more probable." *Id.* at 610, 85 S.Ct. at 1230. The prosecutor "made much" of the defendant's failure to testify: "These things he has not seen fit to take the stand and deny or explain . . . Essie Mae is dead, she can't tell you her side of the story. The defendant won't." *Id.* at 610–11, 85 S.Ct. at 1230–31.

The Supreme Court dealt with a very different set of facts in *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). There defense counsel outlined a defense in opening statement, referring to what the evidence would show, though not

stating that the defendant would testify. Then during presentation of the defense case, after two witnesses had been called by him and had refused to testify on Fifth Amendment grounds, Lockett's attorney advised the court in the jury's presence that he believed Lockett would be the next witness. After a brief recess, however, the attorney told the trial judge that the defendant had decided not to testify and the only defense would be his cross-examination of prosecution witnesses. Under these circumstances the Court determined that repeated references in the prosecutor's closing argument to the prosecution's evidence as "unrefuted" and "uncontradicted" did not constitute an impermissible comment on the defendant's failure to testify.

> We conclude, however, that the prosecutor's closing comments in this case did not violate constitutional prohibitions. Lockett's own counsel had clearly focused the jury's attention on her silence, first, by outlining her contemplated defense in his opening statement and, second, by stating to the court and jury near the close of the case, that Lockett would be the "next witness." When viewed against this background, it seems clear that the prosecutor's closing remarks added nothing to the impression that had already been created by Lockett's refusal to testify after the jury had been promised a defense by her lawyer and told that Lockett would take the stand.

*Id.* at 595, 98 S.Ct. at 2959.

Finally, in *Lakeside v. Oregon*, 435 U.S. 333, 335, 98 S.Ct. 1091, 1092, 55 L.Ed.2d 319 (1978), the Supreme Court upheld the practice of a state trial judge giving a "protective instruction," over the defendant's objection, that failure of the defendant to testify "gives rise to no inference or presumption against the defendant, and this must not be considered by you in determining the question of guilt or innocence."

---

**5.** In his dissent Judge Edwards has quoted from the district court's opinion several statements of the prosecutor which were not relied upon by Butler in his application for habeas relief. We believe Butler's claim must rest on the language which he set forth with specificity in his state court appeals and in these proceedings. It is interesting to note that defense counsel, who was very aware of the courtroom atmosphere, found only the statement at lines 10–15 on page 190 objectionable.

The defendant argued that the privilege against compulsory self-incrimination as defined in *Griffin* is infringed when a trial judge, over a defendant's objection, draws the jury's attention in any way to the defendant's failure to testify. Emphasizing that the privilege involved is not against all testimony, the Court concluded that only adverse comments by a trial judge or prosecutor could be found to contain the necessary element of compulsion which is forbidden by the Fifth Amendment. An instruction which seeks to rule out any "unspoken adverse inferences" does not infringe the privilege. *Id.* at 339, 98 S.Ct. at 1094.

### B.

 At the present time the rule as stated and developed by the Supreme Court appears to be that neither a trial court nor a prosecutor may instruct or suggest to a jury that it may or should draw an inference of guilt from a defendant's election not to testify. *Griffin, supra.* However, the Fifth Amendment does not forbid an instruction which advises the jury of a defendant's right not to testify and charges the jury not to draw any inferences from this fact. *Lakeside, supra.* When the alleged infringement consists of statements which do not comment directly on the defendant's failure to testify or suggest that an inference of guilt should be drawn from this fact, a reviewing court must look at all the surrounding circumstances in determining whether or not there has been a constitutional violation. *Lockett, supra.* It is the third group of cases—those where it has been alleged that statements constituted indirect adverse comments on a defendant's failure to testify—which has given the lower federal courts problems.

Shortly after the *Griffin* decision was rendered a number of courts adopted a test

of improper comment: Whether the language used was manifestly intended to be or was of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify. This test was derived from the pre-*Griffin* decisions in *Knowles v. United States,* 224 F.2d 168, 170 (10th Cir. 1955), and *Morrison v. United States,* 6 F.2d 809, 811 (8th Cir. 1925). This test has been applied both in direct appeals and habeas corpus actions. *See, e.g., United States ex rel. D'Ambrosio v. Fay,* 349 F.2d 957, 961 (2d Cir.), *cert. denied,* 382 U.S. 921, 86 S.Ct. 301, 15 L.Ed.2d 235 (1965) (habeas corpus); *United States v. Wells,* 431 F.2d 434, 435 (6th Cir. 1970), *cert. denied,* 400 U.S. 997, 91 S.Ct. 475, 27 L.Ed.2d 448 (1971) (direct appeal). Every court of appeals has adopted the test.[6]

### V.

### A.

 The petitioner contends for an application of the *Morrison-Knowles* test which would result in a *per se* rule in many cases. He argues that a statement by a prosecutor that defendant has put on no proof or no witnesses, or that the state's evidence is uncontradicted, is always impermissible where the defendant is the only person who could have contradicted evidence introduced by the prosecution. To hold that such statements should be automatically treated as unconstitutional comments on the failure of the defendant to testify would be contrary to the teachings of *Lockett v. Ohio, supra,* where the result turned on circumstances of the trial. As this court, speaking through Judge Jones, recently wrote:

> Whether the jury "necessarily construes" a prosecutor's remark as a comment on a defendant's failure to testify requires a

**6.** In addition to the two cases cited in the text, the following decisions are illustrative of the universal application of this test: *Borodine v. Douzanis,* 592 F.2d 1202, 1209–10 (1st Cir. 1979); *U. S. v. Dansker,* 537 F.2d 40, 63 (3d Cir. 1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977); *U. S. v. Whitehead,* 618 F.2d 523, 527 (4th Cir. 1980); *U. S. v.* *Bright,* 630 F.2d 804, 825 (5th Cir. 1980); *U. S. v. Muscarella,* 585 F.2d 242, 249 (7th Cir. 1978); *Catches v. U. S.,* 582 F.2d 453, 458 (8th Cir. 1978); *U. S. v. Hozian,* 622 F.2d 439, 441 (9th Cir. 1980); *Runnels v. Hess,* 653 F.2d 1359, 1361 (10th Cir. 1981); *U. S. v. Harris,* 627 F.2d 474, 476 (D.C.Cir.), *cert. denied,* 449 U.S. 961, 101 S.Ct. 375, 66 L.Ed.2d 229 (1980).

probing analysis of the context of the comment, and the likely effect of the district court's curative instruction, if any.

*United States v. Robinson*, 651 F.2d 1188, 1197 (6th Cir.), *cert. denied*, 454 U.S. 875, 102 S.Ct. 351, 70 L.Ed.2d 183 (1981). *See also Cunningham v. Perini*, 655 F.2d 98, 100 (6th Cir. 1981).

### B.

Our "probing analysis of the context" begins with the voir dire of the jury at the beginning of Butler's second trial.[7] Speaking to the entire array, Butler's counsel stated:

As Mr. Gill has indicated to you, this is an event that occurred on the University campus. You will find that the actual act of sex will not be denied. Mr. Butler will indicate to you, as the proof comes in later, that there was nothing forceful about this at all. My question to you based on that—he was her instructor. Is there anything about the fact that he was her instructor in school that would require you to put him to a higher degree of conduct, a higher standard of conduct than the law imposes on lay persons, persons who have not been in that relationship? What I am asking you is about the relationship. I am asking you whether or not the mere fact that he was her instructor in school would be sufficient in your mind to require him to come forward and prove more than the average individual?

After the selection process began, defense counsel asked the following question of the panel of prospective jurors:

Let me ask you this—now, I don't expect it will happen—but in the event he should elect not to testify, now the Court will tell you that he doesn't have to and for you not to hold it against him. Would that be a fact, however, you would have to weigh in determining whether or not the incident actually occurred the way Miss Hudson said it did?

7. There had been a mistrial because the jury was unable to agree at the first trial. Butler

Just before accepting the jury, defense counsel advised the panel of twelve who sat on the case:

Now, it has already been mentioned that I have been asking all morning and a large part of the afternoon about the relationship between Mr. Butler and Miss Hudson. Now, the facts will show that there, and there is no dispute, that something did happen. These two folks did have sexual relations. The issue in this case is whether or not it was against her will.

At the trial Jean Hudson testified that she submitted to sexual intercourse with Butler in his office after he told her he was "into violence" and he had pressed a hard object which he said was a knife against her neck while forcing her head down against his body with his right arm. The jury had been told, "Mr. Butler will indicate to you, as the proof comes in later, that there was nothing forceful about this at all." It had also been advised that there was no dispute that a sexual act occurred between Jean Hudson and Robert Butler at the time and place she later testified about, and that the only issue in the case was "whether or not it was against her will." Furthermore, counsel had told the jury that he expected Butler to testify. Thus Butler's attorney clearly indicated to the jury that there would be proof that the acts took place without the use of force and had indicated that this proof would come from the testimony of Butler, who the petitioner now argues was the only person who could have provided it. The statements and questions are similar to those of defense counsel in *Lockett v. Ohio, supra*. As in *Lockett*, defense counsel in this case outlined a defense which would be established "as the proof comes in later." Furthermore, counsel focused the jury's attention of Butler's silence by advising that he expected his client to testify, while asking the jurors if they would hold it against Butler if he should choose not to take the stand.

did testify at that trial.

Next we examine the context in which the statements of the prosecutor were made. Both sides had rested with the defense case consisting of the testimony of one witness, a former student who had attended a class taught by Butler later in the afternoon of the day on which the events involving Jean Hudson took place in Butler's office. This witness merely testified that there was nothing unusual about Butler's behavior at that time. The next step in the trial was opening argument by one of the prosecuting attorneys. This argument consisted of a recital of the evidence from the state's point of view and it evoked no objections from the defense. Then in his argument defense counsel reminded the jury that he had told them earlier, "[W]e were not going to deny that actually something happened in that closet, in that instructor's office on October 7th, 1976. It is true. It happened." What followed was a general attack on the credibility of Jean Hudson, though no one had testified that she was not a credible witness.

This is the context in which the closing argument for the state was made. A defendant had pled not guilty, his attorney had told the jury that the actual act of sex would not be denied and "Mr. Butler will indicate to you, as the proof comes in later, that there was nothing forceful about this at all." [8] Yet at the end of the trial the only person who had admitted that the sex act occurred and claimed it was not forced was the attorney. Thus, in his argument the prosecutor sought to answer the defense lawyer. Under these circumstances it was not impermissible for the assistant district attorney general to say: "He cannot do this and just get back and have an attorney say, 'oh, she is just not telling the truth,' without putting one witness to show why she might be telling otherwise or *how* she might be telling otherwise." It is notable that defense counsel made no objection at this point. The only admission that the sex act had actually occurred had come from his mouth and the only attempt to impugn the credibility of Jean Hudson had been contained in his argument.

The other statement in the closing argument which is claimed to have infringed Butler's right not to be compelled to incriminate himself also clearly refers to the argument and strategy of defense counsel: "Apparently what Mr. Ellis [defense counsel] is saying . . . ." This did no more than restate the obvious, that in spite of defense counsel's promise on voir dire that the proof would indicate the absence of force, no such proof had in fact been introduced. There was an objection to this statement, on the ground that the prosecutor was "classifying all the witnesses," including the defendant. The trial judge immediately responded that in his opinion the prosecutor was not commenting on the failure of Butler to testify. The judge stated that he would charge that the defendant had the right not to testify. Defense counsel made no request for a special charge at that time. When the judge directed the prosecutor to make it clear to the jury that he was referring to "independent witnesses," he (the prosecutor) imme-

8. Judge Jones finds the defense attorney's reference to proof by Butler which would indicate that no force was used "ambiguous." If the reference was indeed ambiguous, the response of the prosecutor was equally ambiguous and should not be the basis of a federal court's overturning a state conviction. Judge Jones also finds the reference to proof by Butler "casual" and "distant in time." Whether it was casual or not is a matter of interpretation. The reference appears to us to have been calculated to condition the jury to accept as true a version of the events which was never testified to, but was argued as fact by defense counsel. The entire trial from voir dire to verdict took less than two days; the statement wasn't "distant in time." The reference to the fact that jurors had been excused and replaced proves nothing. Those who had been excused did not participate in the verdict. The entire panel was in the courtroom throughout voir dire. The jurors who replaced those who were excused heard every statement and question of defense counsel.

Judge Jones correctly points out that lack of consent is an element of the crime of rape in Tennessee. However, when the jury is told that the defendant admits the sex act and that the *proof* will show that it was not forced, the jury very naturally expects some proof to be forthcoming. The questions and statements of the defense attorney clearly focused the jury's attention on Butler's subsequent silence.

diately shifted the focus to the one witness whom the defense had produced and argued that her testimony proved nothing.

There were no further objections during the closing argument or at its conclusion. Defense counsel never moved for a mistrial. Immediately after the prosecutor had concluded his argument, the trial judge instructed the jury. There were no objections to the jury charge which included the following instructions:

> The law presumes the innocence of the defendant, and that presumption stands as a witness for the defendant and maintains until it is overcome by satisfactory evidence of his guilt, and before he can be convicted, his guilt must be established beyond a reasonable doubt. Not a captious, possible or an imaginary doubt, but an honest doubt engendered after an investigation of the entire evidence and an inability after such investigation to let the mind rest easily as to the certainty of guilt.
>
> \* \* \* · \* \* \*
>
> You are to draw no inference and you are to place no emphasis whatsoever upon the fact that the defendant did not testify, as that is his right. The defendant is presumed to be innocent, and that presumption stands in his favor irregardless [sic] of whether he testifies or not, as the law casts the burden upon the State to prove the defendant's guilt beyond a reasonable doubt, and this burden rests upon the State irrespective of whether or not the defendant testifies.

Considered together with the trial judge's statement to the jury at the time of the objection to the prosecutor's arguments, these instructions would have erased any lingering doubt the jury may have had that Butler's failure to testify should be considered in any way by them.

### C.

■ This is not a case where a defendant merely pled not guilty and relied on the presumption of innocence. Rather, it is a case where the jury was promised that the proof would establish the defense that Jean Hudson engaged voluntarily in acts of sex with the petitioner and then absolutely no proof of consent was produced. This case is controlled by *Lockett, supra.*[9] The factual difference, if any, between the two cases lies in the fact that in *Lockett* defense counsel announced in the presence of the jury that the defendant would be a witness whereas in the present case defense counsel told the jury he expected the defendant to testify. However, he had already advised the jury that it would be Butler who would provide proof that force was not used. In both cases the defense attorney gave the jury reason to believe they would hear from the defendant, and thus focused on the silence of the defendants who elected not to take the stand. As the Supreme Court noted in *Lockett*, even though the prosecutor made repeated references to the prosecution's evidence as "unrefuted" and "uncontradicted," these remarks "added nothing to the impression that had already been created by Lockett's refusal to testify after the jury had been promised a defense by her lawyer and told that Lockett would take the stand." 438 U.S. at 595, 98 S.Ct. at 2959.

### D.

We have examined the decisions relied upon by the petitioner, and are not persuaded that they compel a different conclusion. Two recent cases in which this court has granted or affirmed the granting of habeas corpus for impermissible comment on failure of a defendant to testify are

**9.** The dissenters would apparently limit the application of *Lockett* to cases where there has been an exact replication of *Lockett's* facts. To the contrary, we believe *Lockett* announced a broader rule—when a defense lawyer focuses the jury's attention on a defendant's silence, even comments that the evidence was "unrefuted" and "uncontradicted" add nothing to the impression which has already been created by the defendant's refusal to testify. Whatever the "focusing" consists of, it is a factor in determining whether a jury naturally and necessarily would view a prosecutor's later statements to be an impermissible comment on the defendant's failure to testify.

distinguishable. In *Rachel v. Bordenkircher*, 590 F.2d 200 (6th Cir. 1978), the prosecutor's comment was direct, not indirect. "Now we will never know what happened to this boy Trent before he was choked up there . . . . We will never know, these men [the defendants] won't tell us. The only other man who could tell us is dead and in his grave . . . ." 590 F.2d at 201–02. Furthermore, these comments were not made in response to any promises of evidence or other circumstances which had focused on the defendant's silence. *Eberhardt v. Bordenkircher*, 605 F.2d 275 (6th Cir. 1979), was primarily concerned with whether a *Griffin* violation was harmless error. The prosecutor in *Eberhardt* gestured or pointed toward the defendant while saying to the jury, "What other witnesses? Ask yourself that question. Who else could have testified in this case?" 605 F.2d at 278. Again this was a direct comment on failure of the defendant to testify and it was not made in response to any argument by the defendant's counsel.

## CONCLUSION

The prosecutor's statements in the present case were made in the context of a trial where the defendant's theory of innocence had been presented solely in questions, statements and arguments of his attorney. This was so even though the jury had been told that the issue was whether the acts had occurred against Jean Hudson's will and that consent would be established by Butler "as the proof comes in." Although it would be possible to strain from the statements an indirect allusion to Butler's failure to testify, it is far from manifest that they were intended to be thus treated and, considered in context, they are not such as to require a jury "naturally and necessarily" to treat them as such. *See United States ex rel. D'Ambrosio v. Fay, supra,* 439 F.2d at 961.

The judgment of the district court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

GEORGE CLIFTON EDWARDS, Jr., Chief Judge.

Respectfully, I dissent. I would affirm the District Judge's issuance of the writ of habeas corpus. By so doing, I would require Tennessee to retry this rape case without the prosecutorial violation of defendant's Fifth Amendment rights, which the District Judge found and which the record supports.

The Tennessee Court of Criminal Appeals introduced the posture of this case as follows:

> Sentenced to life imprisonment, Robert Butler here appeals from his conviction of rape. The principal issue at trial was whether or not the victim consented. This is the second trial, the first resulting in a mistrial when the jury could not agree.

Defendant was an Assistant Instructor at the University of Tennessee (Knoxville).

The prosecuting witness was an 18-year-old student in his sociology class who had sought an opportunity to take an examination in his office the day before the regular class examination was scheduled.

Judge Lively's opinion provides an accurate summary of the facts of record. I would only add that defendant's counsel conceded before the jury that "something happened" in the dark closet, and the Court of Criminal Appeals of Tennessee noted in its recital of facts:

> A search of his office closet produced samples of both Caucasian and Negroid pubic hairs, although not identifiable as belonging specifically to any particular individuals, and hand prints on the wall which matched those of Jean Hudson. Also visible in the thick dust were footprints which appeared to be those of Butler and Ms. Hudson.

No one who reads this record can fail to conclude at an absolute minimum that defendant grossly abused his role as teacher. In addition, the prosecutrix testified to an oral deadly threat which, while denied by defendant's "not guilty" plea, nonetheless clearly constituted evidence sufficient to support the jury's guilty verdict.

This, however, appears to me to be a much closer case than it apparently does to the majority of my colleagues. Relevant to the impact of the prosecutorial comments which were objected to by defendant's counsel and either ignored or approved by the trial judge are some facts which make this an unusual conviction for rape. The prosecutrix's testimony indicates that after the grossly offensive approach made by her instructor in the office, she nonetheless entered a dark closet with him without any threat on his part and without protest on hers. Unusual also in this rape case is the fact that the jury, with the passionate and, as the District Judge found, unconstitutional arguments ringing in its ears, administered the maximum possible sentence, a life sentence, in a case where no blow was struck nor physical injury received and where no weapon was found or seen. The District Judge's opinion also recorded the fact that this was an all-white jury, a circumstance to which defendant made a belated, legally inappropriate and, of course, unsuccessful objection before the Tennessee Court of Criminal Appeals.

The District Judge's grounds for issuing the writ of habeas corpus thus requiring retrial of this case center upon the rebuttal argument offered by the second of two prosecutors. Judge Morton held that the prosecutor's rebuttal argument, given just before the judge's charge to the jury, violated defendant's Fifth Amendment rights and required the issuance of a writ of habeas corpus. Judge Morton's opinion said in part as follows:

> The second two-day trial of the petitioner proceeded fairly smoothly through the closing argument of defense counsel.[2] At that point, a second prosecutor rose for rebuttal. It was not a seemly beginning:
>
> PROSECUTOR: Ladies and gentlemen, I hope if at any time during this trial I maybe seemed too serious or whatever while at times [defense counsel] has smirked and grinned and laughed—because this case makes me extremely angry and the fraud that [defense counsel] has gotten up here

and tried to perpetrate on you has made me even angrier.

(TR. 186)

An objection by the defendant was overruled without comment.

Like the Tennessee Court of Criminal Appeals, this court agrees that the quoted remark was improper, and the trial judge should have entered an instant and stern rebuke. However, the court does not find the remark to be so prejudicial as to have denied the petitioner due process or the right to a fair trial, standing alone. Nevertheless, it set a poor tone for the argument to follow which contained constitutional errors. Immediately upon the overruling of the objection to the foregoing, the prosecutor told the jury that he did not "hold anything against" defense counsel for trying to make the best case he could, because that was his job. He continued:

> The State of Tennessee has not only the duty to convict the guilty but they must protect the innocent. And if we can find anything in a case that indicates that maybe doesn't [sic] indicate that Mr. Butler was not guilty, but that it might be interpreted in his favor, we would have to turn that over to Mr. Butler. We have an obligation. That is our job. So, when we prosecute a case we do it in the sincere belief that what we are doing, and I think the facts in this case are completely uncontested, supports exactly what we have done.

TR. 186–187.

In addition to inserting the "sincere belief" of the government as to what the truth is, the prosecutor has, on the one hand, told the jury that the state has come forth with all the relevant evidence, and, on the other hand, that it is "completely uncontested" because the defendant did not come forward to testify.

\* \* \* \* \* \*

[L]ater, the prosecutor says: "Mr. Butler is an instructor and you have to tell him as an instructor he cannot do this

and get away. He cannot do this and just get back and have an attorney say, 'ah, she's not telling the truth.' Without putting on one witness to show why she might be telling otherwise or *how* she might be telling otherwise." This language not only points up the fact that it is "an attorney" and not Mr. Butler who is speaking and maintaining the falsity of the prosecutrix's allegation, but it is also pointed out that not one witness has been called to explain—including the defendant.

Two pages further into the transcript, the prosecutor announces:

Apparently what [defense counsel] is saying is that in a rape case we are just going to always say it was just made up and put on no proof to show why it was made up or anything to indicate the witness is lying in any way and then you just can't convict couldn't convict in any rape case.

[DEFENSE COUNSEL]: Your Honor, I normally wouldn't object to that in argument, but I think he has categorized some things into an area of protection that we have. He is classifying all the witnesses. I think he is going to have to qualify that. Because the defendant is under no obligation to testify. But yet under his argument he would be included in the class of witnesses.

THE COURT: He is not commenting on that, in my opinion, [defense counsel], and he is not entitled to comment on it. And the Court will charge that the defendant has the right not to testify.

[DEFENSE COUNSEL]: Thank you, Your Honor.

[PROSECUTOR]: I am referring to independent witnesses outside the party, Your Honor.

THE COURT: Why don't you make that clear to the jury?

[PROSECUTOR]: And [defense counsel] brings in one witness to show that Mr. Butler was doing nothing unusual after this happened.

TR. 190–91.

Whether the prosecutor made it clear to the jury is problematic. However, it is clear that the bell had been rung. And it was the court's responsibility to make the defendant's constitutional rights clear to the jury, not the prosecutor's.

---

[2] At no point in his argument did defense counsel direct the jury's attention to the fact that the defendant had not testified. The Supreme Court has held that a prosecutor's remarks that the state's evidence is "unrefuted" and "uncontradicted" did not violate the *Griffin* rule where defense counsel had clearly focused the jury's attention on the defendant's failure to testify by (1) indicating in his opening statement what the defendant's defense would be when that would clearly involve her testifying to the court and jury and (2) stating to the court and jury just prior to a recess that the defendant would be the next witness (the defendant thereafter decided not to testify and no other proof was presented). *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). The clear implication is that the prosecutor's remarks would have been improper if the defendant had not done the focusing. *See also* "Invitation or Provocation of Error", 24 A.L.R.3d § 11 at 1120.

Assuming without deciding, that *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), must be read so narrowly as to require a new objection to each abuse of the right to silence, I would feel that all which has been quoted above was the subject of contemporaneous objection. I also believe that the prosecutorial comments cannot properly be regarded as harmless error in the context of this case. *See United States v. Hastings*, 660 F.2d 301 (7th Cir. 1981), *cert. granted*, — U.S. ——, 102 S.Ct. 2232, 72 L.Ed.2d 844 (1982).

Two cases deserve special discussion in the decision of this appeal. The first is *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). The basic holding in that case was:

We said in *Malloy v. Hogan*, [378 U.S. 1, 11, 84 S.Ct. 1489, 1495, 12 L.Ed.2d 653 (1964)], that "the same standards must determine whether an accused's silence in either a federal or state proceeding is justified." We take that in its literal sense and hold that the Fifth Amendment, in its direct application to the Fed-

eral Government, and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt.

380 U.S. at 615, 85 S.Ct. at 1233 (footnote omitted).

On the record of this case it is impossible for me, as it was for Judge Morton, to conclude that the prosecutor's comments quoted above were designed to do other than call the jury's attention to defendant's failure to take the stand. Obviously there were only two people in the closet at the time the threat either was or was not made. When the prosecutor argued that "the facts in this case are completely uncontested" and "what [defense counsel] is saying is that in a rape case we are just going to always say it was just made up and put on no proof to show why it was made up or anything to indicate the witness is lying in any way," I see no way to avoid the conclusion that the prosecutor quite deliberately was violating *Griffin's* ban on "comment by the prosecution on the accused's silence." It also seems to me that the trial judge's failure quickly and effectively to stop these practices and to give a clear instruction on defendant's rights compounded the injury.

The second case which requires comment is *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). I read *Lockett* as a case where the defendant's counsel focused the jury's attention on the failure of the defendant to testify by promising shortly before the case went to the jury that the defendant would tell his story and then failing to put him on the stand.

In this case no such promise was ever made and defense counsel's reference to the possibility of defendant testifying occurred during the voir dire of the jury, before the trial ever started. To me, the negative implications of *Lockett* are that had the facts in this case been before the Supreme Court in *Lockett*, a Fifth Amendment violation would have been found.

Finally, I would point out that in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61

L.Ed.2d 560 (1979), the Supreme Court defined the duty of a federal court in dealing with a state habeas case. It said:

The federal habeas corpus statute presumes the norm of a fair trial in the state court and adequate state post-conviction remedies to redress possible error. *What it does not presume is that these state proceedings will always be without error in the constitutional sense.* The duty of a federal habeas corpus court to appraise a claim that constitutional error did occur—reflecting as it does the belief that the "finality" of a deprivation of liberty through the invocation of the criminal sanction is simply not to be achieved at the expense of a constitutional right—is not one that can be so lightly abjured.

*Id.* at 323, 99 S.Ct. at 2791 (emphasis added) (citation omitted).

For the reasons cited above, I would affirm Judge Morton's discharge of that duty in his issuance of the writ.

NATHANIEL R. JONES, Circuit Judge, concurring in part and dissenting in part.

I concur with the majority's conclusion that Butler exhausted his remedies in state court and that *Rose v. Lundy,* —— U.S. ——, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) does not bar our consideration of his claims. However, I dissent from the majority's conclusion that the prosecutorial statements at issue here did not constitute impermissible comments on Butler's failure to testify.

The majority recognizes that the controlling test in the instant case is whether the language used was manifestly intended to be or was of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify. *Ante* at 1170. And the majority properly notes that such a determination requires "a probing analysis" of the context of the comment, including the likely effect of any curative instructions. *United States v. Robinson*, 651 F.2d 1188, 1197 (6th Cir.), *cert. denied,* 454 U.S. 875, 102 S.Ct. 351, 70 L.Ed.2d 183 (1981).

The majority errs, however, in holding that the instant case is controlled by *Lockett v. Ohio*, 438 U.S. 586, 588, 98 S.Ct. 2954, 2956, 57 L.Ed.2d 973 (1978). *Lockett* held that a prosecutor's closing references to the State's evidence as "uncontradicted" did not impermissibly comment on Lockett's failure to testify where defense counsel "had clearly focused the jury's attention on [Lockett's] silence." 438 U.S. at 595, 98 S.Ct. at 2959: The Supreme Court relied on two factors: (1) defense counsel had outlined in his opening statement a detailed "contemplated defense" in the nature of an alibi; and (2) defense counsel stated "to the court and the jury near the close of the case that Lockett would be the 'next witness,'" when in fact she did not testify. Unlike the majority, I cannot find that these factors are present in the instant case.

Clearly the more important of the two factors in *Lockett* was defense counsel's statement near the close of the case that Lockett would testify. In its strained attempt to find an analogous remark in the instant case, the majority relies on statements made by defense counsel during voir dire. These statements, however, were ambiguous in nature, were distant in time from the prosecutor's closing argument, and were made for a different purpose than the statement relied upon in *Lockett*.

The majority states that Butler's counsel "advised the jury that it would be Butler who would provide proof that force was not used." *Ante* at 1173. However, defense counsel actually stated as follows:

> You will find that the actual act of sex will not be denied. Mr. Butler will indicate to you, as the proof comes in later, that there was nothing forceful in this at all.

This statement is ambiguous, to say the least. It may fairly be read to mean only that Mr. Butler would present a defense. Such a defense could seek to demonstrate, simply by cross-examination of the State's witnesses, that there was nothing forceful about the act of sex. Furthermore, this ambiguous statement was not even heard by the entire jury. The transcript of the jury selection reveals that three jurors were excused and replaced after the above statement was made.

Similarly, it is misleading for the majority to baldly state that defense counsel "told the jury that he expected Butler to testify." *Ante* at 1171. Again, the remark relied upon by the majority was made during a lengthy voir dire. Moreover, the remark was made in the context of an inquiry whether the jury members would weigh against Butler a decision *not* to testify. Thus the remark, taken in context, was not a representation that Butler would testify, but rather an indication that he might not. Furthermore, this statement, too, was not heard by the entire jury; two jurors were excused and replaced after the statement was made.

Both of these statements are a far cry from the situation in *Lockett*, where the defense counsel unequivocally stated "near the close of the case" that the defendant would be the "next witness." Under the majority's view, common and casual remarks made by defense counsel during voir dire would inadvertently confer a license upon the prosecutor to repeatedly allude to defendant's failure to testify by remarking upon the "uncontradicted" and "uncontested" nature of the State's evidence. Such an approach unconscionably penalizes a defendant for an innocent choice of words by his counsel.

I also disagree that this case can be analogized to *Lockett* because in both cases the jury was "promised a defense." 438 U.S. at 595, 98 S.Ct. at 2959. In *Lockett*, defense counsel outlined a detailed "version of the events" in the nature of an alibi. 438 U.S. at 592, 98 S.Ct. at 2958. The failure of the defense to introduce testimony in support of this version of the events, in conjunction with defense counsel's later statement that Lockett would be the next witness, focused the jury's attention on her silence. Butler's counsel, however, did not outline a detailed alibi which needed positive testimony to support it. Rather, he simply indicated that the admitted act of sexual intercourse did not occur against the will of the com-

plaintant. I therefore am at a loss to understand the majority's assertion that "[t]his is not a case where a defendant merely pled not guilty and relied on the presumption of innocence." *Ante* at 1173. Consent is not an affirmative defense which the defendant has the burden to establish by the testimony of himself or others. Rather, lack of consent is an element of the crime which the State must prove beyond a reasonable doubt. Tenn.Code Ann. § 39–3705(a)(1).

Accordingly, Butler's counsel, by raising the issue of consent, did not thereby promise testimony from Butler. The promise of a defense in the instant case, unlike that in *Lockett*, could be and was fulfilled by cross-examination of the State's witnesses. The majority has taken the "promise of a defense" factor of *Lockett* wholly out of context in order to apply it to the instant case. Of course, it would be the rare defense counsel who would not in some sense of the phrase "promise a defense," but rather would simply have his client plead not guilty and simply inform the jury of the defendant's reliance upon the presumption of innocence, without even cross-examination of the State's witnesses.

Finding *Lockett* inapplicable to the instant case, I would affirm the district court's conclusion that the prosecutor's comments were manifestly intended to convey or were of such character that the jury would naturally and necessarily take them to be a comment on Butler's failure to testify. In a case such as this, where the defendant is the only person who could present evidence to contradict the State's case, a comment that evidence is "uncontradicted" is impermissible. *United States v. Robinson*, 651 F.2d 1188 (6th Cir. 1981); *United States v. Handman*, 447 F.2d 853 (7th Cir. 1971); *Desmond v. United States*, 345 F.2d 225 (1st Cir. 1965).

Especially in a case such as this, where the potential for prejudice is great, a court

must be meticulous in protecting the defendant and the jury from sly and subtle inferences which may inflame or improperly influence the jury. Here the court did not give an effective curative instruction, but rather delegated to the prosecutor—the transgressor—the duty to make clear the defendant's right to remain silent. Of course, the prosecutor did no such thing, but rather switched his argument to another subject, only to conclude his rebuttal with one more comment on the absence of any testimony which contradicted the State's case.[1]

The prosecutor's repeated references to Butler's failure to present proof in support of his defense brought home to the jury the notion that, because the defendant did not testify, his defense must have been without merit. This argument runs roughshod over Butler's constitutional privilege not to testify. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Therefore, I would affirm the judgment of the district court.

---

1. After the two remarks objected to by Butler, and after the ineffective curative instruction by the trial court, the prosecutor at the conclusion of his rebuttal stated as follows:

 Everything, every bit of evidence went to support what Jean Hudson said had happened. No, no evidence has gone to show

that Jean Hudson is not telling you the absolute truth in this case. You have a decision to make. You can say, Jean Hudson, we don't believe that you are telling the truth. There is nothing to contradict you. But we are just not going to believe you.