840 F.2d 16
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Carl Lee ASHLEY, Petitioner-Appellant,
v.
Theodore KOEHLER, Warden, Marquette Prison, Respondent-Appellee.
 No. 87-1482.
 United States Court of Appeals, Sixth Circuit.
 Feb. 18, 1988.
 
 Before MILBURN and RALPH B. GUY, Jr., Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Carl Ashley, petitioner-appellant, appeals from the district court's denial of his petition for a writ of habeas corpus challenging his state court conviction pursuant to 28 U.S.C. Sec. 2254. Ashley argues that he was denied due process and effective assistance of counsel. For the following reasons, we affirm the judgment of the district court.
 
 I.
 
 2
 Ashley was convicted of first degree felony murder[1] after a jury trial in Genesee County Circuit Court. The Michigan Court of Appeals reversed the conviction on the basis that the court's instructions allowed conviction without a finding of malice. The Michigan Supreme Court reversed and reinstated the conviction. Ashley filed a habeas corpus petition in district court which was denied. This court affirmed the ruling of the district court. Petitioner then filed a delayed application for leave to appeal which was denied by the Michigan Courts. The instant habeas petition followed.
 
 
 3
 At petitioner's trial, the prosecutor introduced the following evidence. On the night of April 21, 1976 an attendant at a gas station in the Flint, Michigan area was killed and approximately four hundred dollars was taken from the station. Ashley's fingerprint and palm print were found on a metal door and door handle in the station. Gary Anthony, a friend of Ashley, testified that Ashley asked him to aid in a robbery in the Flint area. When the conversation took place Ashley had a gun and discussed the possibility of killing. Sheila Serra testified that Ashley told her he had robbed a gas station and may have killed someone. The prosecutor also introduced a statement Ashley gave the police. In the statement Ashley denied being in the area of the crime and said he was at his mother's house. Ashley presented no evidence.
 
 
 4
 During closing argument the prosecutor made the following statement:
 
 
 5
 Now, the problem, of course, always when you have contradictory or conflicting testimony, then you have to decide who you believe and who you won't believe. Based on the evidence and testimony here, we don't have that problem. There is no conflicting testimony. In all fairness in analyzing the system and applying the rule of thumb of justice, there is no conflicting testimony.
 
 
 6
 Finally, defense counsel in closing argument did not argue for acquital, but instead made the following argument:
 
 
 7
 The question is one of degree. We do not come before you asking you to find Mr. Ashley not guilty. We do not come before you, as a matter of fact, asking you to find the Defendant as guilty of Manslaughter [sic]. I think the consideration comes down to whether or not he's guilty of First Degree Homicide, or Second Degree Homicide and you have to consider the instructions of the Judge.
 
 
 8
 Ashley argues that he was denied due process when he was convicted of felony murder for a killing in the course of a larceny because larceny is not an inherently dangerous crime; that he was denied a fair trial by the prosecutor's comment on his exercise of his right not to testify and his injection of the issue of alibi in his case in chief; that he was denied due process when his defense counsel admitted he was guilty of second degree murder and that he was denied effective assistance of counsel.
 
 II.
 
 9
 Initially, Ashley argues that he was denied due process by the use of larceny, a nondangerous felony, as the underlying felony for his felony murder conviction.[2] He argues that for felony murder the underlying crime has to be inherently dangerous and because larceny, which was used as the underlying crime in this case, is not inherently dangerous, his conviction was unconstitutional.
 
 
 10
 In this argument, Ashley relies on United States v. Leary, 395 U.S. 6, 36 (1969) for the proposition that "criminal statutory presumptions must be regarded as 'irrational' or 'arbitrary,' and hence unconstitutional unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to flow." The Leary case dealt with a statutory presumption that possession of marijuana was sufficient for conviction of the crime of receipt, concealment, sale or purchase of marijuana. Ashley argues that the Mighigan statute presumes that larceny is dangerous conduct and that under Leary such a presumption is unconstitutional.
 
 
 11
 This portion of Ashley's argument does not withstand analysis. The keystone of Ashley's argument is that inherent dangerousness of the underlying felony was an essential element of the felony murder rule in Michigan. This is not the case. Michigan includes larceny of any kind as one of the enumerated crimes in its first degree murder statute. See Mich.Comp.Laws Ann. Sec. 750.316 (West Supp.1987). In People v. Carter, 387 Mich. 397 (1972), the Michigan Supreme Court made the following observations and holding:
 
 
 12
 Both murder and manslaughter deal with the wrongful killing of another person. If there has been a killing during the commission of one of the felonies enumerated under first-degree murder, this establishes the degree. If the killing occurs during the commission of some other felony, malice may be implied but the nature of the felonious act must be considered. Many felonies are not inherently dangerous to human life. To hold that in all cases it is murder if a killing occurs in the commission of any felony would take from the jury the essential question of malice.
 
 
 13
 Id. at 422 (emphasis added). In Aaron, the court noted that "the enumerated felonies are not necessarily inherently dangerous to human life." Aaron, 409 Mich. at 727. Therefore, while the inherently dangerous element may have applied to unenumerated crimes it was not a requirement of the enumerated crime, and the statute was not creating a presumption that larceny was inherently dangerous.
 
 
 14
 Since the pre Aaron felony murder rule in Michigan did not require that the underlying enumerated felony be inherently dangerous the statute does not create an unconstitutional presumption under Leary and, accordingly, Ashley's conviction for a murder during the commission of a larceny was not unconstitutional.
 
 
 15
 Ashley next makes two arguments concerning the prosecutor's conduct at trial. Initially, he argues that the prosecutor's statement made during closing argument that "there is no conflicting testimony" was an unconstitutional comment on Ashley's exercise of his right not to testify. The appellee notes that Michigan requires an objection to preserve the issue of prosecutorial misconduct, People v. Hall, 396 Mich. 650, 655 (1976) and that since Ashley made no such objection the cause and prejudice standard applies. See Wainwright v. Sykes, 433 U.S. 72, 87, reh'g denied, 434 U.S. 880 (1977).
 
 
 16
 The district court made the following finding concerning that statement:
 
 
 17
 This Court finds that the prosecutor's statement does not amount to a Fifth Amendment violation. The defense presented no evidence and called no witnesses. The prosecutor's single broad statement concerning the lack of defense evidence does not appear to be 'calculated to create in the jurors' minds an inference of guilt based solely on petitioner's election to remain silent....'
 
 
 18
 The test for improper indirect comments on the accused's failure to testify is "[w]hether the language used was manifestly intended to be or was of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." Butler v. Rose, 686 F.2d 1163, 1170 (6th Cir.1982) (en banc).
 
 
 19
 In Spalla v. Foltz, 788 F.2d 400 (6th Cir.), cert. denied, --- U.S. ----, 107 S.Ct. 410 (1986), this court recited the four factors that are considered when analyzing a prosecutor's alleged comment on a defendant's failure to testify.
 
 
 20
 A probing analysis requires consideration of the following four factors:
 
 
 21
 (1) Were the comments 'manifestly intended' to reflect the accused's silence or of such a character that the jury would 'naturally and necessarily' take them as such;
 
 
 22
 (2) Were the remarks isolated or extensive;
 
 
 23
 (3) Was the evidence of guilt otherwise overwhelming;
 
 
 24
 (4) What curative instructions were given, and when.
 
 
 25
 Id. at 404 (quoting Hearn v. Mintzes, 708 F.2d 1072, 1077 (6th Cir.1983)).
 
 
 26
 Ashley bases his argument on the premise that only he could have offered conflicting testimony and therefore the comment that there was no conflicting testimony was a comment on his failure to testify. Since it is not true that the only conflicting testimony a criminal defendant can offer is his own testimony, Ashley's premise is faulty and his argument fails. A reading of the closing argument of the prosecutor shows that he was commenting on the fact that no evidence of any kind was presented by the defendant. Therefore, we are convinced that the comments were not manifestly intended to reflect on the defendant's failure to testify, nor were they of such a character that the jury would naturally and necessarily take them to be such a comment. Furthermore, the remarks were isolated and the evidence of guilt was strong. Finally, although an immediate curative instruction was not given, curative instructions were given as part of the regular instructions immediately following the prosecutor's argument. Accordingly, we agree with the district court's conclusion that the comment was not a Fifth Amendment violation.
 
 
 27
 As the appellee argues, and the district court found, since the comment was not a constitutional violation, Ashley has not shown prejudice resulting from his failure to object.[3]
 
 
 28
 Secondly, Ashley argues that he was denied a fair trial when the prosecutor injected the issue of alibi into his case in chief by introducing a tape recording of an exculpatory statement Ashley gave to the police. Ashley argued that this conduct impermissibly shifted the burden of proof, relying on a Michigan Court of Appeals case for the following language:
 
 
 29
 In situations where the jury has been apprised of the defendant's filing of a notice of alibi by the court or prosecutor where the defendant does not present an alibi defense, the comment impermissibly shifts the burden of proof to the defendant.
 
 
 30
 People v. Bouknight, 106 Mich.App. 798 (1981), rev'd on other grounds, 419 Mich. 458 (1984).[4]
 
 
 31
 The district court found that the prosecutor's conduct concerning the exculpatory statement did not prejudice the defendant. He based this finding on the fact that unlike the Bouknight situation, Ashley had not filed a notice of alibi and did not intend to present an alibi defense, and the fact that "[d]efense counsel essentially admitted that Petitioner killed the victim, his main argument was that the evidence was insufficient to convict of first-degree murder."
 
 
 32
 Accordingly, the district court found that petitioner had failed to meet the cause and prejudice test since he found that there was no ineffective assistance of counsel to establish cause and the alleged improprieties did not actually prejudice the defendant. Given the weight of the evidence and the defendant's theory of the case, we agree with the district court.
 
 
 33
 Ashley's third argument is that his attorney's statements made during closing argument were an admission of guilt as to the offense of second degree murder[5] which violated due process when no record waiver of his right to have a jury decide his guilt was obtained. For this argument, Ashley relies in part on Wiley v. Sowders, 647 F.2d 642 (6th Cir.), cert. denied, 454 U.S. 1091 (1981).
 
 
 34
 Ashley's due process argument fails because, as appellee points out, the language from Wiley relied on by Ashley was modified by this court in Wiley v. Sowders, 669 F.2d 386 (6th Cir.1972). In Wiley II, this court made the following conclusion:
 
 
 35
 We conclude that an on-the-record inquiry by the trial court to determine whether a criminal defendant has consented to an admission of guilt during closing arguments represents the preferred practice. But we did not hold in Wiley, and we do not now hold, that due process requires such a practice.
 
 
 36
 Wiley, 669 F.2d at 389. Wiley II is not dispositive of this case, however, since it adhered to the holding of Wiley I that "petitioner was denied effective assistance of counsel when his own lawyer admitted his client's guilt without first obtaining his client's consent to this strategy." Id. (quoting Wiley I, 647 F.2d at 650). Since Ashley also raises an ineffective assistance of counsel argument, Wiley II does not dispose of all his claims but merely his due process claim.
 
 
 37
 Finally, Ashley makes three claims of ineffective assistance of counsel. The first two concern the prosecutor's conduct and the instruction on larceny as an underlying crime for felony-murder. The last claim deals with his defense counsel's admission of Ashley's guilt.
 
 
 38
 To establish an ineffective assistance of counsel claim a defendant must show "that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687, reh'g denied, 467 U.S. 1267 (1984).
 
 
 39
 Since, on the first two claims, we find that there was no constitutional violation, the defendant has not shown that the alleged deficient performance prejudiced the defense. Therefore, on these claims, the appellant has not established an ineffective assistance of counsel claim.
 
 
 40
 On the third claim, the district court, relying on McNeal v. Wainwright, 722 F.2d 674 (11th Cir.1984),[6] found that the approach of the defense counsel was a "tactical" decision and was not tantamount to a guilty plea. The defense counsel made the following statements at closing argument: "We do not come before you asking to find Mr. Ashley not guilty" and "I think the consideration comes down to whether or not he's guilty of First Degree Homicide, or Second Degree Homicide." We believe that these statement were an admission of guilt to a lesser included offense.
 
 
 41
 If Ashley did not consent to the strategy by his attorney, such an action could be deemed a denial of effective assistance of counsel under Wiley I and Wiley II. However, under the facts of this case, we find that Ashley has not met the prejudice prong of Strickland.[7] Strickland defines the prejudice prong as follows: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In this case, there was the following evidence of Ashley's guilt. On April 2, 1976, the victim, a gas station attendant, was found beaten to death at a gas station near Flint, Michigan. Approximately four hundred dollars in cash was missing from the station. Petitioner's fingerprints were found on a metal door near the body. A bloodied tire iron was also found near the body. Gary Anthony, an acquaintance of Petitioner's, testified that Petitioner had approached him on the day of the crime and asked him to help him with an armed robbery in Flint. At the time of this conversation, petitioner was carrying a gun. Petitioner's girlfriend, Sheila Serra, testified that Petitioner had later told her that he had robbed a gas station and thought he had killed someone. Given this evidence, we conclude that, defense counsel's comments notwithstanding, the outcome of this trial would not have been different.
 
 
 42
 For the foregoing reasons, we AFFIRM the district court's judgment.
 
 
 
 [1]
 The Michigan Penal Code includes in its definition of first degree murder, murder "which is committed in perpetration, or attempt to perpetrate ... larceny of any kind...." Mich.Comp.Laws Ann. Sec. 750.316 (West Supp.1987)
 
 
 [2]
 Ashley's arguments pertain to Michigan law as it existed in 1976. In 1980, Michigan abrogated the felony murder rule. People v. Aaron, 409 Mich. 672, 727 (1980)
 
 
 [3]
 Ashley alleged ineffective assistance of counsel as cause for his failure to timely object to the alleged prosecutorial misconduct
 
 
 [4]
 Ashley also cites United States v. Smith, 500 F.2d 293 (6th Cir.1974) for the proposition that a prosecutor can impermissibly shift the burden of proof through his comments during closing argument. While Smith does stand for this proposition, its facts are distinguishable from those in the instant case. In Smith the prosecutor specifically asked the jury to require the defendants to explain the meaning of certain evidence. Smith, 500 F.2d at 294-95. In the instant case no such comment was made nor can any such request be inferred from any of the prosecutor's comments
 
 
 [5]
 Ashley also argues that his defense counsel's strategy was an effective admission of guilt to first degree murder because of the evidence that $407 had been taken from the gas station and Shiela Serra's testimony that Ashley told her he had robbed a gas station. Defense counsel, however, specifically argued that the prosecutor had not proved first degree murder beyond a reasonable doubt
 
 
 [6]
 The district court's reliance on McNeal, is suspect, since the counsel in McNeal did not admit their client's guilt to a lesser included offense, but made the following statement: "We submit to you that when you look at all these circumstances, you're going to find that perhaps what has been shown to you at most to have been proven beyond a reasonable doubt is the offense of manslaughter...." McNeal, 722 F.2d at 675
 
 
 [7]
 In Wiley I this court noted that at the time of its decisions the question of whether a defendant must show prejudice by the defense counsel's conduct was an open question. Wiley 647 F.2d at 650. However, after Strickland this is no longer the case