George Bernard EBERHARDT,
Petitioner-Appellant,

v.

Donald E. BORDENKIRCHER, Warden,
Kentucky State Penitentiary,
Respondent-Appellee.

No. 78–3588.

United States Court of Appeals,
Sixth Circuit.

Argued April 10, 1979.

Decided Sept. 10, 1979.

Terrence R. Fitzgerald, Deputy Public Defender, Chief App. Defender, Louisville, Ky. (Court-appointed), for petitioner-appellant.

George Bernard Eberhardt, pro se.

Robert F. Stephens, Atty. Gen. of Kentucky, John F. Zink, Asst. Atty. Gen., Frankfort, Ky., for respondent-appellee.

Before ENGEL and MERRITT, Circuit Judges, and PECK, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

The principal issue in this appeal is how the harmless error standard is to be applied in habeas corpus review of state court convictions, when the error involved was a comment by the prosecutor on the defendant's failure to take the stand, in violation of the rule laid down in *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). In 1975, petitioner George Eberhardt was found guilty by a Kentucky jury of one count of armed robbery. On appeal, the Kentucky Supreme Court affirmed his conviction, relying primarily on a harmless error analysis. The court held that there had been prosecutorial misconduct in the course of the trial, and that the introduction of a "mug shot" of the defendant into evidence without a cautionary instruction was error, but that "in view of the strong evidence indicating appellant's guilt and the imposition of the minimum sentence," the errors were not prejudicial. The Kentucky Supreme Court went on to hold that it was not clear from the record whether the prosecutor, in his closing argument, had made remarks which were "reasonably certain to direct the jury's attention to the defendant's failure to testify," but that even if he had, any error was "nonprejudicial."

 Eberhardt then turned to the federal courts for relief, filing a petition for the writ of habeas corpus, asserting the errors discussed by the state supreme court as grounds for relief.* The district court

---

* Eberhardt also urges that the trial judge's refusal to give a requested cautionary eyewitness instruction entitled him to relief. We agree with the district court that except in the most

dismissed the petition, concluding that the prosecutorial misconduct and use of police file photographs were not constitutional errors, and thus not grounds for federal habeas corpus relief. As for the asserted *Griffin* error, the district court held that it could "accept the finding of the Supreme Court of Kentucky" that the remark was harmless error, and would rely upon the apparent conclusion of the trial judge that it did not require a mistrial.

In our view, resolution of the issues in this case turns upon the question of how the harmless error issue is decided. We believe that there was a clear violation of the *Griffin* prohibition of any prosecutorial comment on the defendant's failure to take the stand. The further question of whether that error was harmless necessitates an explanation both of the underlying crime and the conduct of the trial. We set out that background before returning to a discussion of the *Griffin* issue.

## THE ROBBERY AND EBERHARDT'S TRIAL

On October 7, 1974, two men robbed a Save-a-Step Food Market in Louisville, Kentucky, of approximately $200. One of the two was a young man named Michael Gant, who subsequently pled guilty to the crime. The other was an older man, alleged by the State to be Eberhardt. The robbery occurred about 11 p. m., and only the night manager and another employee were in the store at the time. The robbery lasted only a matter of minutes, and no one was hurt, though the older man was armed.

A few days later, the two Save-a-Step employees were shown a book of mug shots selected from the files of the Louisville police department, and clearly so marked. Both men selected the photograph of Eberhardt as the older robber.

At about the same time, Phillip Banks was arrested. Banks signed a statement confessing to being the driver of the getaway car the night of the robbery, and naming Gant and Eberhardt as the other two involved. Banks also subsequently pled guilty.

At trial, the State presented the two employees as its principal witnesses, both of whom described the robbery and identified Eberhardt as the older robber. Through the officer who had handled the identification procedure, the collection of mug shots was received into evidence and the defendant's picture identified for the jury, over the defendant's objection. No limiting instruction was given.

The State also called Banks to the stand, but while he freely admitted his involvement in the robbery, he disavowed the statement he had signed, testifying instead that Eberhardt was not involved. The third man, he testified, was a friend of Gant named "Dusty" whom he had met in a neighborhood bar. Banks' prior inconsistent statement was admitted into evidence.

Eberhardt presented an alibi defense, through his landlady and one of his roommates, that he was driving back from Cleveland at the time of the robbery. In the course of cross-examination, and apparently without any foundation in fact, the prosecutor asked the roommate how much he was "getting paid for your testimony today." An objection was sustained and the question withdrawn, but the judge did not admonish the jury to disregard the comment. The defense also put Gant on the stand, who corroborated Banks' testimony that the third man was not Eberhardt but was "Dusty," whom Gant had met a few times in a bar.

During his closing argument, the prosecutor again referred to the possibility that the defendant had "bought off" his witnesses,

---

unusual circumstances, see, e. g., *Taylor v. Kentucky*, 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978), the failure to give requested jury instructions does not amount to constitutional error. Habeas corpus review of state convictions is not the broad exercise of supervisory powers which we might choose to exercise over federal trials. It is limited to constitutional error, and the failure to give the requested instruction here was clearly not a due process violation. *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).

inviting the jury to conjecture about how the roommate would be rewarded for his testimony. This time, the defendant's prompt objection and motion for a mistrial was overruled.

A few moments later, the prosecutor began an argument which should always raise a red flag warning that the limits of permissible argument are fast being approached. He began by criticizing the inadequacy of the witnesses presented by the defense, and then moved on to remind the jury indirectly but emphatically that the defendant had not taken the stand in his own defense:

> Ask yourself, ladies and gentlemen, where the woman was who picked up this mysterious Dusty after the robbery—Mr. Gant. Where was she? Where were they? What other witnesses could the defendant's case have put forward *who were totally available to you? What other witnesses? Ask yourself that question. Who else could have testified in this case?* (emphasis added)

With this final argument, the prosecutor gestured toward the defendant—"pointed" according to defendant's counsel, or "a point in a sweeping gesture" as the prosecutor himself described it while arguing against the motion for a mistrial. The prompt objection of the defendant was sustained, and the prosecutor moved on to another area of argument. Again, however, no cautionary instruction was given and a subsequent motion for a mistrial was denied.

### THE *GRIFFIN* ISSUE

■ We can only view the remarks of the prosecutor quoted above, together with the gesture toward the defendant, to be a clear comment on the failure of the defendant to take the stand. While, as the State contends, there may have been a few other witnesses who might have testified in the case, there were certainly none other than the defendant who were "totally available" in any sense of the phrase. It is clear from the record the effect that the prosecutor hoped to achieve by his argument.

■ It is impermissible for prosecutors to present arguments to the jury calculated to create in the jurors' minds an inference of guilt based solely on petitioner's election to remain silent, as we believe this argument clearly was. *Rachel v. Bordenkircher*, 590 F.2d 200 (6th Cir. 1978). Hypothetical "other witnesses," in a case where the comments are so clearly directed toward the defendant, do not eliminate the prosecutor's duty to avoid all such unfair and misleading argument, which places an unconstitutional burden on the defendant's exercise of his right not to testify. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

### HARMLESS ERROR

■ The far more difficult issue in this case is whether this error was nevertheless harmless, given the evidence against the defendant and taken in the context of the trial as a whole. Both the Kentucky Supreme Court and the district court so held, though we note that neither explained its reasoning in any detail to point out the factors in the trial which it viewed as tending to neutralize the constitutional error committed here. After a reading of the entire transcript of the trial in this case, we find ourselves unable to agree with the district court and the Kentucky Supreme Court. Harmless error, in the context of a violation of a constitutional right of a defendant, is an extremely narrow standard, permitting the State to avoid the retrial of a defendant only when it can demonstrate beyond a reasonable doubt that the error did not contribute in any way to the conviction of the defendant. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). As the Fifth Circuit has recently emphasized:

> *Chapman* . . . may open a hatch for harmless constitutional error to appear, but its aperture is not so gargantuan that constitutional rights are minimized to infinitesimality. We must be confident that the scales of justice are not tilted, are not skewed. The *Chapman* harmless error rule was not intended to

be a cover-up for every prosecutorial error. It was really intended as a Band-Aid for what is, under the circumstances, a minor, albeit constitutional, legal abrasion. The constitution speaks in cosmic concepts or cosmic principles, and they are not to be grudgingly applied nor miniturized. We must be careful lest the purgatory of the harmless error doctrine erode our sacred constitutional rights. *United States v. Hammond*, 598 F.2d 1008, 1013–1014 (5th Cir. 1979) (Goldberg, J.).

Depending upon the constitutional error involved, that heavy burden may be carried in a number of ways. In *Chapman*, a case also involving comment upon the defendant's exercise of his right to remain silent, the Supreme Court in refusing to find harmless error noted the repeated nature of the prosecutor's comments, and the fact that the State's case, while strong, was such that "honest, fair-minded jurors might very well have brought in not-guilty verdicts." *Id.* 386 U.S. at 26, 87 S.Ct. at 829. Other opinions discussing the harmless error standard in the context of improper prosecutorial comment on the defendant's failure to take the stand have focused on whether the case against the defendant was "overwhelming and undisputed," *Berryman v. Colbert*, 538 F.2d 1247 (6th Cir. 1976), and whether the error could reasonably be viewed as eradicated by the rulings of the trial judge, his admonitions to counsel, and instructions to disregard. *United States v. Smith*, 500 F.2d 293 (6th Cir. 1974). Since harmless error analysis essentially involves the question of whether the error is but a "small error[ ] or defect that [has] little, if any, likelihood of having affected the result of the trial," *Chapman, supra*, 386 U.S. at 22, 87 S.Ct. at 827, whether the trial was otherwise relatively error-free is important. As Judge McCree noted for the court in *Smith, supra*, "prejudice may be magnified by the cumulative effect of repeated improper conduct." *Id.*, at 297.

■ Since reasonable people may differ on the strength of a case or the efficacy of jury instructions, there will in most cases be some disagreement on the issue of harmless error. But the guidelines mentioned above are of some help, as is the fact that harm is presumed to have flowed from constitutional error; the burden is on the State to demonstrate conclusively to the contrary. It is not enough for the reviewing court to feel that the evidence is strong and that the defendant probably would have been convicted anyway. That is a decision for the jury to make, unaffected by improper argument or impermissible inferences urged by the prosecutor.

■ In the present case, the only factor weighing in favor of a finding of harmless error is the fact that the prosecutor's comments were relatively brief and not repeated. *Compare, Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). It only takes a single comment, however, to remind a jury that the defendant has not testified and to fix in the jurors' minds the impermissible inference that the defendant is guilty merely because of his exercise of that right. *Rachel v. Bordenkircher*, 590 F.2d 200 (6th Cir. 1978). Furthermore, the evidence in this case was far from "overwhelming." It was a strong case, perhaps; certainly enough to *permit* a jury to find Eberhardt guilty, but it is unlikely that we would ever hold that a case based entirely on eyewitness testimony, in the context of a brief robbery in which none of the parties knew each other, and a repudiated prior inconsistent statement, was "overwhelming." "[E]yewitness identifications by strangers based upon fleeting observations made in stressful circumstances are frequently inaccurate." *United States v. Barker*, 553 F.2d 1013 (6th Cir. 1977). Furthermore, the State's case was not undisputed. Both the other participants in the crime denied that Eberhardt was their partner, and he presented an alibi which, though far from indisputable, was consistent and credible enough that it might have been accepted by a reasonable juror, absent the prosecutor's improper remarks.

A further consideration is the fact that there were other substantial errors at trial. The Kentucky Supreme Court has already

**280**

held that the introduction of the mug shots without a cautionary instruction and the prosecutor's unfounded questions asserting that the defendant's witnesses were being paid for their testimony were violations of state law, and we assume they will not occur again at a new trial. Therefore, we need not decide whether these errors were also of constitutional magnitude. Nevertheless, they were clearly errors which touch on fundamental rights and affect the overall fairness of the trial Eberhardt received. Their cumulative effect is therefore a factor to be weighed in the harmless error balance. The use of mug shots has been strongly condemned in federal trials, as effectively eliminating the presumption of innocence and replacing it with an unmistakable badge of criminality. *Barnes v. United States*, 124 U.S.App.D.C. 318, 365 F.2d 509 (D.C.Cir. 1966); *United States v. Reed*, 376 F.2d 226 (7th Cir. 1967). The prosecutor's improper questions were of the unfair, unethical sort we have condemned time and again. *United States v. Millen*, 594 F.2d 1085 (6th Cir. 1979).

Finally, the trial judge did not give a strong, prompt instruction to the jury, explaining the defendant's right not to testify and admonishing it to disregard the prosecutor's comments. The courts have often been criticized for heavy reliance on the efficacy of such instructions, but we believe that a jury must be presumed to listen to and have respect for the cautions of a trial judge. In the proper case, a prompt, strong admonition may serve to render an error harmless. *See, Lussier v. Gunter*, 552 F.2d 385 (1st Cir. 1977). In this case, however, not only was there no prompt, strong admonition, but the trial judge *never* gave an instruction on the subject.

We are unable to conclude that the State has carried its heavy burden of proving that the error in this case was harmless. Therefore, we reverse the decision of the district court and remand for entry of an order granting the writ of habeas corpus, conditioned upon the State's right to retry the defendant within a reasonable time.