Robert MELCHIOR, Petitioner-Appellant,

v.

Arnold R. JAGO, Respondent-Appellee.

No. 80–3500.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 11, 1982.

Decided Dec. 15, 1983.

Robert Melchior, pro se.

Edward F. Marek, Federal Public Defender (court-appointed), Donald N. Krosin, Deputy Federal Public Defender (argued), Cleveland, Ohio, for petitioner-appellant.

William J. Brown, Atty. Gen. of Ohio, Simon B. Karas, Asst. Atty. Gen. (argued), Columbus, Ohio, for respondent-appellee.

Before JONES and CONTIE, Circuit Judges and BROWN, Senior District Judge.*

NATHANIEL R. JONES, Circuit Judge.

The petitioner Robert Melchior was indicted for aggravated murder and aggravated robbery in Montgomery County, Ohio. Though he plead guilty to both counts, the verdict following a jury trial branded Melchior guilty as charged. He was sentenced to death on the murder charge and to 7–25 years imprisonment on the robbery charge, the sentences to run consecutively. The Ohio Court of Appeals affirmed the

* The Honorable Wesley E. Brown, United States District Court for the District of Kansas, sitting by designation.

conviction and sentence in all respects. On October 4, 1976, the Ohio Supreme Court affirmed the conviction, but modified the death sentence to life imprisonment.

A petition for a writ of habeas corpus was filed with the District Court for the Southern District of Ohio, Western Division. The petition challenges the murder conviction on the basis of the trial court's instruction on self defense. The Jury was instructed that the petitioner had the burden of proving this affirmative defense by a preponderance of the evidence. The petitioner claims that this was an erroneous placement of the burden and that he is, thus, entitled to habeas relief. The district court did not address this substantive claim, refusing to grant the writ on the basis of its conclusion that Melchior was procedurally barred from raising the issue by his failure to object to the instruction when given. This appeal followed.

While we conclude that the district court's analysis of the procedural issue was incorrect, we also conclude that the trial court's instruction on self defense, if erroneous at all, was harmless beyond a reasonable doubt. Accordingly, we affirm the district court's judgment denying habeas relief.

## I.

On the evening of January 22, 1976, the petitioner was apparently with some friends at the World Lounge, a place frequented by homosexuals. He was seen leaving the lounge with the deceased, Paul Krista. A witness testified that, before leaving the bar, the petitioner indicated that he had met a man with $200 who had invited him to a nearby apartment. The petitioner allegedly said that he planned to pretend that he would be willing to engage in sexual relations for the sole purpose of obtaining the money; he planned to "game" Paul Krista.

On January 24, 1976 and again on February 25, 1976, the petitioner provided statements of the events leading to Krista's death. The statements were recorded and subsequently played to the jury. These versions are substantially similar to Melchior's testimony at trial and together provide the basis for the following recitation of the facts.

According to the petitioner, Krista approached him while he was playing pool at the World Lounge. Krista told him that he had $200. He then invited Melchior to his apartment to have some beer and to listen to his stereo. The petitioner accompanied Krista to his apartment with the intention of taking the money and the stereo, but with no intention of having sexual relations. In keeping with this plan, the petitioner rebuffed Krista's advances and requested another beer. When Krista returned with the second beer, Melchior told Krista to give him the money and to take him back to the bar. The petitioner claims that Krista then produced a knife from the side of the couch or the right side of his pants. Melchior grabbed the blade while moving behind Krista and putting his arm around Krista's neck. He began punching Krista with his right fist, all the while applying increased pressure to his neck. When Krista relaxed, the petitioner released him and watched him drop to the floor. Melchior claims that because Krista was gasping for breath when he left the apartment, he thought Krista had not been seriously wounded. He took Krista's car, stereo and cash.

Krista's body was found January 23, 1976. He was face down on the floor with his head completely beneath a small table covered with blood. There were blood stains on the living room walls, furniture and door. A knife blade covered with blood was near the body with the handle broken off. The blood was that of the victim. A broken vase was beside the body and a partial palm print taken from a piece of that vase matched the petitioner's. Krista's injuries were extensive. He had various cuts and bruises covering his body and there was a stab wound in his lower left back, extending through the right lower lobe of the lung. The neck had two puncture wounds on the right side. Based on a series of detailed observations, the coroner opined

that Krista had died from asphyxiation caused by manual strangulation *after* he had been stabbed.

When indicted and tried for Krista's murder, the petitioner claimed that he had acted in self defense. The trial court specifically charged the jury that the burden of proving self defense was upon the defendant and that burden could only be met if the defense were established by a preponderance of the evidence. No objection was raised to the charge when given.

The Ohio Court of Appeals and the Ohio Supreme Court found that the instruction failed to comport with O.R.C. § 2901.05,[1] as interpreted by the Ohio Supreme Court in *State v. Robinson,* 47 Ohio St.2d 103, 351 N.E.2d 88 (1976), and was therefore erroneous as a matter of law.[2] However, the state courts went on to say that, though error, the instruction was harmless. They based this conclusion on their finding that a review of the record failed to disclose evidence sufficient to warrant an instruction on the defense in the first instance. Neither state opinion discussed the failure to object at trial; the affirmance of the conviction was based solely on the finding of harmless error.[3]

The district court did address the failure to object at trial. The court believed that the violation of the state contemporaneous objection rule required a showing of cause and actual prejudice under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)[4] before the petition could be heard. The court did find cause in the fact that Ohio had traditionally placed the burden of proving self defense on the defendant and the Ohio Supreme Court had not, at the time of trial, announced its departure from that view. As such, the court reasoned that the petitioner would have no reason to believe that an objection would have been availing.[5] The district court held, however, that the petitioner had failed to demonstrate actual prejudice. The court concluded that since requiring a defendant to prove self defense would not, in his view, *negate any of the elements of first-degree murder under Ohio law,* there could have been no denial of due process. Having found the issue procedurally barred from habeas review, the district court denied the writ without considering the merits of the petitioner's claim.

## II.

Generally, a prisoner alleging a constitutional claim in federal court follow-

---

1. O.R.C. § 2901.05 establishes the placement of the burden with regard to affirmative defenses. The statute has been altered more than once. For all pre-1974 cases, the burden of proving self-defense was upon the defendants by statute. The same is true for all post-1978 cases. For cases, like the instant one, tried between 1974 and 1978, the statutory burden of persuasion was upon the state. At the time of Melchior's trial, the statute read as follows:

 (A) Every person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof is upon the prosecution. The *burden of going forward* with an affirmative defense is upon the accused. (Emphasis added).

2. *State v. Melchior,* 56 Ohio St.2d 15, 381 N.E.2d 195 (1978).

3. By virtue of Ohio Rule of Criminal Procedure 30, a party is generally required to enter a timely objection in order to preserve the right to challenge an alleged error on appeal. *But see* note 6, *infra.*

4. In *Wainwright,* the Supreme Court specifically held that, *absent a showing of cause and*

*prejudice,* a federal court is not to address contentions of federal law which were not considered on the merits in the state proceeding by virtue of a defendant's failure to raise them there *as required* by state procedure. The court did not, however, establish a definitive standard for "cause" and "prejudice":

> We leave open for resolution in future decisions the precise definition of the "cause"—and—"prejudice" standard, and note here only that it is narrower than the standard set forth in dicta in *Fay v. Noia,* 372 U.S. 391 [83 S.Ct. 822, 9 L.Ed.2d 837] (1963), which would make federal habeas review generally available to state convicts absent a knowing and deliberate waiver of the federal constitutional contention.

5. The Supreme Court has since found that this set of facts would *not* amount to sufficient cause to justify failure to comply with a contemporaneous objection rule. *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).

ing a state procedural default must demonstrate cause and actual prejudice if habeas relief is to be available. *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes, supra; Henderson v. Jago,* 681 F.2d 471 (6th Cir.1982). It is uncontroverted that the petitioner failed to object to the jury instructions when given. It is also beyond dispute that Rule 30 of the Ohio Rules of Criminal Procedure establishes a clear contemporaneous objection prerequisite to the assertion of errors on appeal.[6] Based on these facts, the district court reasoned that it was bound to apply the *Wainwright* cause and prejudice standard and to, thus, conclude that a procedural bar foreclosed consideration of the petition. Putting aside the question of whether the district court's analysis of the presence of cause and prejudice was correct, we find the very use of the standard inappropriate.

Failure to comply with state procedural rules may bar federal habeas review of the underlying federal claim, absent a showing of "cause" for the failure and actual "prejudice" resulting from the alleged constitutional violation. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

In *Sykes,* petitioner had failed at trial and apparently on direct appeal to challenge the admissibility of statements allegedly obtained in violation of his *Miranda* rights. 433 U.S. at 75, 97 S.Ct. at 2500. He apparently first challenged the use of the statements in an unsuccessful state habeas petition. *Id.* The United States Supreme Court held the petitioner's failure to comply at trial with the state's contemporaneous-objection rule constituted an "independent and adequate state ground" for the state court judgment, barring federal habeas review unless petitioner could show cause and prejudice. *Id.* at 86–7, 97 S.Ct. at 2506–07. In a recent federal habeas corpus case, the United States Supreme Court reaffirmed the *Sykes* standard in *Engle v. Isaac,* 456

U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), recognizing that the costs of a federal writ of habeas corpus "are particularly high when a trial default has barred a prisoner from obtaining adjudication of his constitutional claim in the state courts." 456 U.S. at 128, 102 S.Ct. at 1572.

It has been explained that the rationale for the *Sykes* doctrine is the recognition of the integrity of the state court's ability to enforce its procedural rules and the state's sovereign power to punish offenders. "The failure of the federal habeas courts generally to require compliance with a contemporaneous-objection rule tends to detract from the perception of the trial of a criminal case in state court as a decisive and portentous event." *Sykes,* 433 U.S. at 90, 97 S.Ct. at 2508. However, equally important underpinnings of the *Sykes* doctrine are considerations of comity and federalism. As the United States Supreme Court recently stated in *Isaac, supra,* without *Sykes'* requirement that defense counsel present constitutional claims during trial, the state appellate courts would not have a "chance to mend their own fences and avoid federal intrusion." *Isaac,* 456 U.S. at 129, 102 S.Ct. at 1572.

 Considerations of comity and federalism have resulted in the development of a well settled exception to the procedural default rule of *Sykes:* Where a state appellate court does not rely on a procedural default, but reaches the merits of the federal law claim, the *Sykes* bar is inapplicable. *County Court of Ulster County v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979); *Engle v. Isaac,* 456 U.S. 107, 135 at n. 44, 102 S.Ct. 1558, 1575 at n. 44, 71 L.Ed.2d 783, 805 at n. 44 (1982); *United States v. Frady,* 456 U.S. 152, 177, 102 S.Ct. 1584, 1599, 71 L.Ed.2d 816, 836 (Blackmun, J. concurring 1982). As the United States Supreme Court explained in *County Court of Ulster County, supra,* when the state

---

**6.** Under Ohio Law, when a trial judge gives an erroneous statement of the law in the jury charge, as opposed to the omitting of an otherwise necessary item, the trial judge's error may be reviewed by the Ohio Court of Appeals with-

out the making of a contemporaneous objection. *See Carrothers v. Hunter,* 23 Ohio St.2d 99, 262 N.E.2d 867 (1970); *State v. Lynn,* 5 Ohio St.2d 106, 214 N.E.2d 226 (1966).

courts do not indicate that a federal constitutional claim is barred by some state procedural rule, a federal [habeas] court implies no disrespect for the state by entertaining the claim.[7] It is clear that the Ohio courts did consider the merits of the claim which form the basis of the habeas petition presented to the district court in the instant case. Neither the state appellate court nor the Ohio Supreme Court chose to rely on the state procedural default, thus removing that default as a basis for a bar to federal habeas review.

Accordingly, we find that the district court erred in relying upon a state procedural default which the state courts did not themselves choose to invoke as a bar to appellate review. This Court will proceed to consider the merits of the petitioner's substantive claim.

### III.

The Ohio courts concluded that the trial judge erred as a matter of law when it placed the burden of proving self defense by a preponderance of the evidence upon the defendant. In *State v. Robinson,* 47 Ohio St.2d 103, 351 N.E.2d 88 (1976) the Ohio Supreme Court held that Ohio Rev. Code Ann. § 2901.05(A) changed the previously accepted common law rule for allocating the burden of proof in criminal cases. *Robinson* held that when a criminal defendant raises an affirmative defense, the defendant only has the burden of going forward with evidence sufficient to create an issue as to that defense. Once such evidence is presented, the prosecution must demonstrate beyond a reasonable doubt the guilt of the defendant, even to the extent of disproving the affirmative defense. *See also State v. Humphries,* 51 Ohio St.2d 95, 364 N.E.2d 1354 (1977). Based on this formulation of state law, the Ohio Court of Appeals concluded, and the state supreme court agreed, that the trial judge's instructions in the present case were erroneous.

However, the fact that the trial court's instructions violated state law does not, standing alone, justify federal habeas relief. Mere errors of state law are not generally cognizable in the habeas corpus context.[8] *Engle v. Isaac,* 456 U.S. at 121 n. 21, 102 S.Ct. at 1568 n. 21. *See also Bell v. Arn,* 536 F.2d 123 (6th Cir.1976); *Reese v. Cardwell,* 410 F.2d 1125 (6th Cir.1969). Rather, the appellant must establish the presence of a federal constitutional violation if he is to be entitled to the relief he seeks.

The Supreme Court has already found that a claim charging only a violation of § 2901.05 O.R.C. "does no more than suggest that the instructions at respondent's trial may have violated state law." *Engle v. Isaac,* 456 U.S. at 120, 102 S.Ct. at 1567. In *Isaac,* the court reasoned that Ohio had chosen to assume the burden of disproving an affirmative defense without also designating the absence of the defense as an element of the crime. The Court held that as long as the state is required to prove beyond a reasonable doubt each and every element of the crime as it is defined, due process is satisfied. Thus, the Court concluded, due process does not require a state to meet any further burden than it *chooses* to assume. *Id.* It is clear then that the trial court's failure to comport with § 2901.05, as interpreted by *Robinson,* can not, without more, serve as a basis for habeas relief.

The petitioner contends, however, that separate and apart from the consideration of a state law violation, Ohio could not constitutionally shift the burden of proving

---

7. The general rationale behind the rule we follow here is that if the state courts do not honor a procedural bar, the federal courts do no damage to notions of state-federal comity in following their lead. *See e.g. County Court of Ulster County v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).

8. An exception to this general rule does exist where errors of state law are so grossly erroneous as to result in a denial of fundamental fairness. *See Handley v. Pitts,* 491 F.Supp. 597, 599 (1978), *aff'd.,* 623 F.2d 23 (6th Cir. 1980); *Maglaya v. Buchkoe,* 515 F.2d 265 (6th Cir.), *cert. denied,* 423 U.S. 931, 96 S.Ct. 282, 46 L.Ed.2d 260 (1975); *Gemmel v. Buchkoe* 358 F.2d 338 (6th Cir.1966).

self defense as the trial court did in the present case. The argument behind this contention is that crimes requiring knowing or purposeful behavior imply a degree of culpability which is necessarily absent when one acts in self defense. Accordingly, once a defendant raises the possibility of self defense, the state should be required to disprove that defense as part of its duty to establish the appropriate *mens rea.*

Several courts have adopted this rationale, interpreting *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) and *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) as charging the prosecution with the constitutional duty of proving the absence of self-defense. In *Mullaney* the Supreme Court held that the due process clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the state's definition of the charge. The Supreme Court in *Patterson* further held that a state may only place the burden of proving an affirmative defense on the defendant as long as it does *not* require the defendant to prove an essential element of the crime. In that case, the Court declined to adopt as a "constitutional imperative, operative countrywide, that a state must disprove beyond a reasonable doubt every fact constituting and all affirmative defenses related to the culpability of an accused." *Patterson,* 432 U.S. at 210, 97 S.Ct. at 2327.

In declining to adopt a uniform rule, *Patterson* left to each circuit the question of the extent of the prosecutorial burden. While the Fourth Circuit, *Wynn v. Mahoney,* 600 F.2d 448 (4th Cir.) *cert. denied,* 444 U.S. 950, 100 S.Ct. 423, 62 L.Ed.2d 320 (1979), the Fifth Circuit, *Tennon v. Ricketts,* 642 F.2d 161 (5th Cir.1981); *Holloway v. McElroy,* 632 F.2d 605 (5th Cir.) *cert. denied,* 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981), and recent scholarship [9] have placed upon the prosecutor the burden

of proving the absence of self-defense, this Circuit has not fully resolved the issue. In *Hooper v. Perini,* 641 F.2d 445 (6th Cir. 1981), Judge Celebrezze summarized the position he took as the writing judge in *Carter v. Jago,* 637 F.2d 449 (6th Cir.1980):

> The thrust of *Carter* is that due process of law does not preclude a state, once having proved the fundamental elements of a crime beyond a reasonable doubt from then placing the burden of proving an affirmative defense on the accused. In this setting, an instruction shifting the burden of proof does not remove from the prosecution the full burden resting upon it under *In re Winship,* 397 U.S. 358 [90 S.Ct. 1068, 25 L.Ed.2d 368] (1970), but simply reflects a legislative evaluation of a party's superior access to the proof.

The subsequent Supreme Court decision in *Isaac,* however, may cast doubt upon this position. In *Isaac,* the court addressed this issue in circumstances similar to those we now consider and concluded that the habeas petitioner before it had raised at least a "colorable constitutional claim." 456 U.S. at 122, 102 S.Ct. at 1568. The Court acknowledged the division among the circuits, discussed above, and reasoned that the mere existence of the controversy suggested that the argument "states at least a plausible constitutional claim." *Id.* Finding that the claim had been barred under *Wainwright,* however, the court did not reach the substantive issue. The extent to which this dicta in *Isaac* requires a reformulation of this Court's prior stance therefore remains an open question.[10]

■ Because we are unconvinced that habeas relief is warranted in this case regardless of whether the trial court's instructions were erroneous, we need not resolve this open question. The Ohio Courts found that although the instruction was erroneous as a matter of state law, the error was harmless beyond a reasonable doubt. The

---

9. Jeffries & Stephen, "Defenses, Presumptions and Burden of Proof in Criminal Law," 88 Yale L.J. 1325 (1979); Comment, Shifting the Burden of Proving Self-Defense—With Analysis of Related Ohio Law, 11 Akron L.Rev. 717 (1978).

10. As in the present case, both *Carter* and *Isaac* dealt with *Ohio* prisoners and the constitutionality of placing the burden of proving self-defense upon them.

state's court of appeals concluded, and the Supreme Court affirmed, that there was insufficient evidence to submit the issue of self-defense to the jury in the first instance. We agree.

■■■■ The question of whether there is sufficient evidence to warrant submission of an issue to the jury is a question of law based on the historical facts developed at trial. While a federal court may apply the law to a given set of facts as it deems appropriate, a presumption of correctness attaches to all underlying factual determinations made by a state court. *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). Accordingly, in assessing the evidence submitted as to self defense we presume that the factual scenario found by the state courts, and largely reproduced above, is accurate.[11]

■■■■ The basic postulates of Ohio law applicable to the self defense issue as it is raised in this case can be quickly summarized. First, it is a necessary condition of the right to claim self defense that the accused killer be without fault. *See* 27 O.Jur.2d 630, *et seq.* Accordingly, where he has brought about the conflict, it is the defendant's duty to employ all means in his power to avert the necessity of killing. In order for an initial aggressor to withdraw and regain the right to act in self-defense, he or she must clearly manifest a *good faith* intention to withdraw from the affray and must remove any just apprehension of fear the original victim may possess. *Id.* at 634–35.

■■■■ In addition, Ohio has maintained a duty to retreat in the self-defense context. A person who is where he has a right to be may stand his ground and resist force with force, but a person who is where he has no right to be must follow the common law rule and "retreat to the wall." *Id.* at 636–37. Even where one is an invitee, if his or her purpose is to do harm and that purpose continues unabated, the invitee becomes a trespasser, *ab initio.* 52 O.Jr.2d 447.

Based on these general principles, the facts clearly indicate that the petitioner was an aggressor, initially at fault, who never withdrew. Melchior went to Krista's apartment with the sole intention of stealing his property. When Krista attempted to defend that property, the altercation began. Melchior made no effort to stop the affray and there was no effort to retreat, despite the fact that he was four to five feet from Krista when the conflict began. A close look at the details surrounding the ultimate conclusion of the fight between Melchior and Krista further indicates that there was no competent evidence from which to find that the petitioner acted in a justifiably defensive posture. Examining the objective facts, the Ohio Court of Appeals concluded:

> Considering the location and nature of Paul's wounds, the distribution of *his* blood around the living room, the position of his body indicating that he was thrown under the table, *the cause of his death,* the relative sizes of the appellant and Paul, and where his blood was found, it is beyond cavel that the appellant's versions could not have given rise to reasonable doubt as to his guilt stemming from any claim of self defense.

Ohio Court of Appeals (No. CA 5305, July 18, 1977) unpublished opinion at 18. (Emphasis in original). We find this a fair assessment of the petitioner's claim.

■■■■ We recognize that harmless error in the context of an asserted constitutional violation is an extremely narrow standard, permitting the state to avoid retrial only if it can be demonstrated beyond a reasonable doubt that the error did not contribute in any way to the conviction. *Eberhardt v. Bordenkircher,* 605 F.2d 275 (6th Cir.1979). Both state courts specifically found that reasonable minds could have come to but *one* conclusion on the force of the evidence: that the defendant was guilty and had not been acting in self-defense. We are compelled to the same conclusion. Our review of the record reveals that, other than the

---

11. *See State v. Melchior,* 56 Ohio St.2d 15, 381 N.E.2d 195 (1978).

defendant's own assertion of self-defense, an assertion that was not only unsubstantiated, but was contradicted by his own version of the events, there is simply *no* evidence as to the existence of the affirmative defense. Accordingly, we are convinced that it is irrelevant where the burden on this issue was placed because considerations of self defense simply could not have come into play. Thus, it is clear that there is no reasonable possibility that the instruction, even if erroneous, could have contributed to Melchior's conviction and that the harmless error rule is properly applicable.

██ The petitioner argues in the alternative that *even if* the evidence were insufficient to warrant the instruction as an original proposition, once the trial court chose to give one, it was bound to do so properly. The petitioner contends that the giving of an concededly erroneous instruction should never be deemed harmless error. This Court impliedly reached the same issue in *Hooper v. Perini, supra*. There, we examined the evidence presented on the issue of self defense and concluded, as we do here, that it was insufficient to raise a jury question. We then determined that since the instruction was unnecessary in the first instance, an improper delivery of it must, therefore, be harmless error. We believe that the holding in *Hooper* applies equally to the present case. As noted, once this Court is convinced beyond a reasonable doubt that an error did not contribute in any way to a conviction, the legal standard for finding an error harmless is satisfied. *Eberhardt v. Bordenkircher, supra*. Where, as here, there is no evidence on the issue, the nature of the instruction given will generally be irrelevant. If we were to hold to the contrary and accept the appellant's argument, the harmless error doctrine would largely be rendered a nullity. In addition, we are adverse to any rule which would make trial judges reluctant to tender requested instructions. The position the appellant proposes would surely have such an effect, making trial courts overly cautious for fear of reversal, even where an instruction may have been superfluous.[12]

It is clear then that, even if we assume for the sake of argument that the appellant has asserted a colorable constitutional claim in his habeas petition, any error that may have been committed by the trial court was harmless. Thus, while the procedural ground upon which the district court based its denial of habeas relief was incorrect, we find the judgment entered otherwise proper. Accordingly, the order denying the petition for a writ of habeas corpus is hereby, AFFIRMED.

CONTIE, Circuit Judge, concurring.

I believe the State of Ohio can constitutionally place the burden of proving self-defense upon the defendant in this case. I therefore concur in the majority opinion, but on different grounds. The petitioner was convicted under Ohio's felony murder statute which, at the time of petitioner's trial, provided that "[n]o person shall purposely cause the death of another while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit ... aggravated robbery...." *Ohio Rev.Code* § 2903.01(B). The state was thus required to prove beyond a reasonable doubt (1) the death; (2) petitioner's intent to kill; and (3) causation which must occur during or while fleeing from the commission or attempted commission of aggravated robbery.[1] The statute does not presume that any element of the crime exists. *Cf. Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

The Supreme Court has recognized that once each element of an offense is established beyond a reasonable doubt, a state is

---

12. As the state court of appeals observed: This case can only be viewed as a spinoff from the unfortunate tendency of trial courts to charge the jury on self-defense every time there is only the merest scintilla of evidence in the case touching on that subject.

1. Malice aforethought is not an element of felony murder in Ohio. *See Ohio Rev.Code* § 2903.01(B).

not required to prove beyond a reasonable doubt every fact, the existence or nonexistence of which it is willing to recognize as an exculpatory or mitigating circumstance. *Patterson v. New York,* 432 U.S. 197, 206–07, 97 S.Ct. 2319, 2324–25, 53 L.Ed.2d 281 (1977); *Leland v. Oregon,* 343 U.S. 790, 795–96, 799, 72 S.Ct. 1002, 1005–06, 1008, 96 L.Ed. 1302 (1952). In this case, the trial court correctly instructed the jury that the state was required to prove each element of the offense beyond a reasonable doubt. The court also indicated that petitioner's affirmative defense constituted a separate issue which should be considered only if the jury first determined that the state had met its burden. In other words, petitioner's affirmative defense did not serve to negate any elements of this offense. *See State v. Poole,* 33 Ohio St.2d 18, 19, 294 N.E.2d 888 (1973). Accordingly, once the prosecution has proven beyond a reasonable doubt that the defendant intentionally killed another person during or fleeing from the commission or attempted commission of aggravated robbery, I believe the State of Ohio can constitutionally place the burden of proving self-defense upon the defendant in a prosecution for felony murder under *Ohio Rev. Code* § 2903.01(B).[2] *Patterson v. New York,* 432 U.S. at 209–10, 97 S.Ct. at 2326–27; *Carter v. Jago,* 637 F.2d 449, 455–57 (6th Cir.1980), *cert. denied,* 456 U.S. 980, 102 S.Ct. 2249, 72 L.Ed.2d 856 (1982); *State v. Poole,* 33 Ohio St.2d at 19, 294 N.E.2d 888.

---

**2.** That the Supreme Court in *Engle v. Isaac,* 456 U.S. 107, 122, 102 S.Ct. 1558, 1568, 71 L.Ed.2d 783 (1982) referred to petitioner's due process argument as stating "a plausible constitutional claim" indicates only that the Court would have been compelled to address this issue in the absence of a procedural bar. As a result, I disagree with the majority's assertion that this statement "may cast doubt upon" the position that a state, once having proved the fundamental elements of a crime beyond a reasonable doubt, may place the burden of proving self-defense upon the accused. *See Engle v. Isaac,* 456 U.S. 107, 137, 102 S.Ct. 1558, 1576, 71 L.Ed.2d 783 (1982) (Stevens, J., concurring); *Patterson v. New York,* 432 U.S. 197, 206, 209–10, 97 S.Ct. 2319, 2324, 2326–27, 53 L.Ed.2d 281 (1977); *Carter v. Jago,* 637 F.2d 449, 456–57 (6th Cir.1980), *cert. denied,* 456 U.S. 980, 102 S.Ct. 2249, 72 L.Ed.2d 856 (1982).